James H. Rotondo (JR-3966)
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103-1212
(860) 275-0197
(860) 881-2470 (fax)
jhrotondo@daypitney.com

Jonathan Matthew Borg (JB-9487)
Day Pitney LLP
7 Times Square
Times Square Tower
New York, New York 10036
(212) 297-5800
(212) 682-3485 fax
jborg@daypitney.com

Attorneys for Defendant,
Aetna Life Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
**BRIAN WOLOSHIN, on behalf of himself**
**and all others similarly situated,**

                          **Plaintiff,**

             v.

**AETNA LIFE INS. CO.,**

                          **Defendant.**
-------------------------------------------------------x

**Case No. 7:07 CV 6664 (KMK)**

**Magistrate Judge Yanthis**

**ECF Case**

## AETNA LIFE INSURANCE COMPANY'S RESPONSE TO THE ORDER TO SHOW CAUSE DATED FEBRUARY 13, 2008

## TABLE OF CONTENTS                                            **<u>PAGE</u>**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

ARGUMENT ...................................................................................................... 6

    A.    Woloshin Is Not Entitled to Injunctive Relief ................................ 6

        1.    Woloshin Cannot Show a Likelihood of Success or Serious Questions on the Merits ................................................ 7

        2.    Woloshin Will Suffer No Irreparable Harm Should the Court Deny His Request for Injunctive Relief ........................... 11

    B.    Woloshin Cannot Establish a "Clear Record" of Abuse or Threatened Abuse To Warrant Relief Under Fed. R. Civ. Proc. 23(d)................... 12

        1.    Aetna Has Both the Right and the Obligation to Communicate With Plan Participants............................................................. 13

        2.    Aetna's Communication with Putative Class Members is Not Misleading, Coercive or Otherwise Improper ......................... 15

            i.    Aetna's Notice Is Not a Settlement Offer Nor Does it Contain Release Language........................................... 16

            ii.    Aetna's Notice Does Not Discourage Participation in Plaintiff's Class Action Nor Is It Threatening In Any Manner ................................................................ 17

            iii.    Aetna's Notice Accurately Describes Benesowitz ..................... 19

            iv.    Aetna's Notice Poses No Risk of Coercion ................................ 20

    C.    Woloshin's Proposed Relief Is Over Broad and Designed Only to Serve His Class Action Efforts ......................................................... 21

CONCLUSION................................................................................................. 23

## INTRODUCTION

Before the ink was dry on *Benesowitz v. MetLife*[1] and before the New York Court of Appeals had even ruled on a motion to reargue the *Benesowitz* decision that provides the ostensible basis for this lawsuit, class action counsel had already attempted to cash in by filing the present action, accusing Aetna Life Insurance Company ("Aetna") of willfully violating New York law – a violation determined by the New York Court ***for the first time*** only days earlier. The New York Department of Insurance had a less fevered approach to *Benesowitz*. Six months later, after carefully considering that decision and its impact on the insurance industry, it issued a Circular Letter that directed all insurers to: (1) put notices on their websites about the effect of *Benesowitz*; (2) contact certain individuals who might have been denied benefits under pre-*Benesowitz* interpretations; and, (3) reconsider their claims by applying pre-existing condition provisions as waiting or elimination periods, rather than exclusions. The Plaintiff, Brian Woloshin ("Woloshin"), now asks this Court to effectively void the Insurance Department's directive. The only justification for doing so is that plaintiff's counsel might lose a chance at a big class action fee if Aetna is permitted to do without class counsel's supervision what the Insurance Department's has commanded it to do.

By his Application for an Order to Show Cause ("Application"), Woloshin seeks to enjoin or restrict Aetna from communicating with claimants, or alternatively, to require Aetna to obtain the approval of the Court and class counsel prior to communicating with claimants. Woloshin's Application must be denied because (1) he cannot demonstrate a likelihood of success on the merits or irreparable harm warranting injunctive relief, and (2) he has failed to

---

[1] *Benesowitz v. Metropolitan Life Ins. Co.*, 8 NY3d 661 (2007).

establish that Aetna's communications, through its website or otherwise, are improper,
misleading, coercive or otherwise constitute a threat to the purposes of Rule 23(d).

## STATEMENT OF FACTS

On July 24, 2007, Woloshin brought this action against Aetna.  His one-count Second
Amended Complaint, filed on November 15, 2007, alleges that the pre-existing condition
provision in the long term disability ("LTD") policy issued by Aetna to his employer, Memec,
LLC ("Memec"), violates New York Insurance Law § 3234(a)(2) because it provides a
permanent bar to LTD coverage when a claimant's illness results from a pre-existing condition
and arises during the first twelve months following his effective date of coverage.  (Woloshin
Second Am. Complt. ¶¶ 8, 26, 33, 48).  Woloshin asserts this claim both individually and on
behalf of a class[2] who are participants in policies that allegedly contain "the same provisions."
(Second Am. Complt. ¶ 22).  Woloshin also claims Aetna violated § 3234(a)(2) by enforcing
these allegedly illegal provisions and excluding him and the other members of the class from
coverage.  (Second Am. Complt. ¶ 47).  He seeks class-wide relief including: (1) a declaration
that the pre-existing condition clauses violate New York Insurance Law; (2) a judgment striking
the pre-existing condition clauses from the policies and declaring them unenforceable; (3) an

---

[2] Woloshin purports to bring this action on behalf of a class consisting of:

> [A]ll New York insureds: (i) who are beneficiaries under long term disability policies issued by Aetna that
> are governed by ERISA; and (ii) who were denied benefits pursuant to the Pre-existing Condition Clause
> (as defined herein) during the period July 24, 2001 through the date on which Defendant's wrongful
> conduct ceases, inclusive (the "Class" and the "Class Period," respectfully).

(Second Am. Complt. ¶ 2).  Woloshin further describes his class as follows:

> The Class consists of thousands of individuals and is so numerous that joinder of all members as
> individual plaintiffs is impracticable.  While the exact number of Class members is unknown and
> can only be ascertained via discovery, Plaintiff believes that there are thousands of Class members
> in the State of New York.

(Second Am. Complt. ¶ 37(a)).

order that Aetna "re-review the claim files of the Class Members for a calculation of benefits due and/or an assessment as to ongoing eligibility for benefits, to the extent necessary"; (4) an order to create a constructive trust; (5) an order that Aetna pay into the constructive trust an amount sufficient to cover all benefits due or projected to be due and owing to class members; and (6) an award of costs and attorneys fees.

The policy at issue is a Group Life and Accident Insurance Policy[3] (hereinafter the "Policy"), bearing the policy number GP-701176-A, with an effective date of July 1, 2004, which Aetna issued to Memec, LLC, Woloshin's then employer. (Shephard Aff. at ¶ 4, Ex. 1 at Face Page) (Second Am. Complt. ¶ 8, 9, 10). The Policy indicates it was delivered in Florida. (Shephard Aff. at ¶ 6; Ex.1 at Face Page). Furthermore, the Policy contains an explicit choice of law provision providing: "This policy will be construed in line with the law of the jurisdiction in which it is delivered." (Shephard Aff. at ¶ 6, Ex. 1 at Face Page).

Woloshin's suit comes directly in the wake of the New York Court of Appeals decision in *Benesowitz*,[4] which provided a new construction of New York Insurance Law § 3234(a)(2). Section 3234(a)(2) provides: "[n]o pre-existing condition provision shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person." In *Benesowitz*, the court held that § 3234(a)(2) "allows insurers to toll benefits during the first 12 months of coverage, but does not permit them to impose an absolute bar to coverage for disabilities stemming from preexisting conditions." Prior to *Benesowitz*, § 3234(a)(2) had been interpreted to permit a permanent bar to coverage where a claimant's disability stemmed

---

[3] The Policy is attached as Ex. 1 to the Affidavit of Kimberly Shephard, attached herewith as Ex. A.

[4] The Court of Appeals decided *Benesowitz* on June 27, 2007. The defendant in *Benesowitz*, MetLife, filed a motion to reconsider that ruling which was supported by amicus briefs filed by the American Council of Life Insurers and the Life Insurance Council of New York, Inc. on behalf of the insurance industry. On September 17, 2007 the Court of Appeals denied the motion to reconsider.

from a pre-existing condition and arose during the first twelve months of coverage. *See Pulvers v. First UNUM Life Ins.*, 210 F.3d 89, 96 (2d Cir. 2000).

On December 14, 2007, the New York Department of Insurance (hereinafter "DOI") issued its formal response to *Benesowitz* in Circular Letter No. 14 (hereinafter the "Circular Letter" attached as Ex. B).[5]  The Circular Letter mandates that insurers must review their policy forms and, if necessary, submit revised policy forms to the DOI.  The letter also details several remedial actions to be taken with respect to claimants whose benefits had been denied prior to *Benesowitz*, in order "[t]o ensure that affected insureds are treated fairly and in the manner required by Insurance Law Section 3234."  Specifically, the Circular Letter directs that by February 29, 2008, insurers should make a good faith effort to identify and review all claim denials based upon pre-existing conditions going back two years from the date of *Benesowitz*  or longer if the policy form provides for a longer period of time to bring legal action.  By April 30, 2008, insurers should make a good faith effort to notify all affected claimants of the review results and retroactively pay benefits with interest from the commencement of the period for which the insurer would have been liable had the insurer originally applied the *Benesowitz* interpretation of Insurance Law § 3234 (a)(2) to the claim.  Finally, the Circular Letter outlines a post-*Benesowitz* notice that insurers should post on their websites within thirty days of the letter. The Circular Letter dictates that this notice should advise claimants: (1) about the import of *Benesowitz* and which claimants are eligible to have their previously denied claims reviewed; (2) that the insurer is reviewing claims previously denied because of pre-existing conditions within a

---

[5] Although they are not regulations, circular letters have been used by the DOI for decades to provide authoritative guidance to insurance companies. *See, e.g.*, *Washington Post Co. v. New York State Ins. Dep't*, 61 N.Y. 2d 557, 563 (1984) (referring to "[a] long-standing practice, formalized by the use of circular letter since 1927…."). Circular letters are recognized by the New York courts as authoritative statements of DOI policy and are subject to judicial review. *See, e.g.*, *Allstate Ins. Co. v. Serio*, 98 N.Y. 2d 198 (2002) (finding circular letter invalid); *State Farm Mut. Aut. Ins. Co. v. Levin*, 263 A.D.2d 233 (2000) (rejecting challenge to DOI statutory interpretation included in circular letter identified by DOI as its "final agency action").

two-year period (or longer, where applicable) prior to June 27, 2007, and will be contacting such affected claimants; and (3) how to contact the insurer about re-examining a previously denied claim.

On January 14, 2008, within the thirty-day compliance period in the Circular Letter, Aetna posted the requisite notice on its website (hereinafter the "Notice" attached as Ex. C). This Notice describes Aetna's company-wide response to *Benesowitz*, as follows:

> Because of a recent court decision, Aetna, like many other group insurers, is identifying and reviewing disability claims that were denied based upon pre-existing conditions going back two years from June 27, 2007 (or three years depending on the applicable policy language.)
>
> By April 30, 2008, Aetna will attempt to notify all affected claimants in writing of the result of this review and, where appropriate, will pay benefits due under the policy with interest. The court decision and this review apply to claimants under group disability insurance policies issued or issued for delivery in New York.
>
> If your disability claim was denied based on a pre-existing condition, you may contact Aetna at 1-800-726-7777, Monday through Friday, 9:00 a.m. to 5:00 p.m. Eastern Time to find out if your claim is subject to re-examination.

In addition, the Notice references the Circular Letter and details the *Benesowitz* holding.  Finally, the Notice explains that re-examined claims will be subject to a waiting period, claimants will be required to furnish adequate proof of loss, and "all applicable policy provisions, limitations and exclusions will apply for any re-examined claim to the extent not prohibited by the *Benesowitz* decision."  It is this Notice of Aetna's claims reassessment, posted in compliance with the requirements of the DOI, that Woloshin now argues is improper, misleading and coercive.

# ARGUMENT

## A.     Woloshin Is Not Entitled to Injunctive Relief

Woloshin has not, and cannot, meet his burden of demonstrating that injunctive relief[6] is appropriate in this case.  Woloshin's entire lawsuit rests on the faulty assumption that New York Insurance Law § 3234(a)(2) applies to him.  In fact, New York law does not govern the Policy, and therefore Woloshin has no stake in this action and is not entitled to any of the relief he seeks in his Second Amended Complaint.[7]  It stands to reason that he should not be granted injunctive relief where he has absolutely no chance of succeeding on the merits of his claim and will suffer absolutely no harm or hardship from the Court's denial of the injunctive relief he seeks.

Injunctive relief "is an extraordinary and drastic remedy which should not be routinely granted."  *Medical Society of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977).  Prior to a court granting a preliminary injunction, the moving party must show both: (a) irreparable harm; and, (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.  *See Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (affirming

---

[6] Woloshin frames his request as seeking to "immediately and permanently" enjoin Aetna from complying with Circular Letter 14.  Such a request is absurd, for, to obtain a permanent injunction, Woloshin must actually succeed on the merits of his claim, and cannot rest, as when seeking a preliminary injunction, on a mere showing of a likelihood of success.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).  His request is more aptly characterized as one for a preliminary injunction, as he does not seek the Court's involvement after the conclusion of this action.

[7] The fact that New York law does not apply to the Policy will be fatal to class certification in this case as well. Federal Rule of Civil Procedure 23(a) requires that the claims of the representative parties be "typical of the claims . . . of the class."  Similarly, to meet the adequacy requirement in Rule 23(a), a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation and internal quotation marks omitted).  Woloshin can show absolutely no injury under § 3234(a)(2) because New York law does not apply to the Policy.  He cannot be an adequate class representative in this case, as he does not share the same interest and did not suffer the same injury as many of the putative class members.  Furthermore, he is "subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).  Therefore, any attempt to certify this class must fail.

district court's denial of inmate's request for preliminary injunction).  "Movants seeking preliminary injunctive relief, therefore, have a 'heavy burden' to sustain." *RxUSA Wholesale, Inc. v. HHS*, 467 F. Supp. 2d 285, 301 (S.D.N.Y. 2006).  In the class action context, prior to class certification, courts look to whether the named plaintiff has met the preliminary injunction standard.  *See e.g. Interel Envtl. Technologies v. United Jersey Bank*, 894 F. Supp. 623, 634-35 (E.D.N.Y. 1995) (denying request for preliminary injunction finding the named plaintiff had established neither a likelihood of success on the merits nor that he suffered irreparable harm); *Rivers v. Califano*, 86 F.R.D. 41, 44 (S.D.N.Y. 1980) (finding the named plaintiffs had not made the requisite showing that they would suffer irreparable harm so as to justify the issuance of a preliminary injunction).  Furthermore, courts have applied this standard to movants seeking to enjoin a defendant from communicating with putative class members.  *See In re FedEx Ground Package Sys. Empl. Practices Litig.*, No. 3:05-CV-528 RM, 2007 U.S. Dist. LEXIS 79111, at *26 (D. Ind. Oct. 12, 2007).[8]

Here, Woloshin has shown neither irreparable harm nor that there is a likelihood of success on the merits or serious questions on the merits so as to warrant injunctive relief. Indeed, Woloshin's Application for an Order to Show Cause omits any discussion of this well-settled standard.  His Application offers no indication of the viability of his claim.  Woloshin's failure to address this preliminary burden is fatal to his request for an injunction.  Furthermore, for the reasons described below, Woloshin ***cannot*** make this showing.

### 1.    Woloshin Cannot Show a Likelihood of Success or Serious Questions on the Merits

Woloshin's Second Amended Complaint alleges one, and only one, wrong—Aetna's supposed breach of New York Insurance Law § 3234(a)(2).  (Second Am. Complt. ¶ 48).  Here,

---

[8] Copies of all unreported cases are attached as Ex. D for the Court's convenience.

Woloshin has absolutely no claim to relief from this breach because § 3234(a)(2) does not apply to the Policy. Thus, he can show neither a likelihood of success on the merits of his claim, nor serious questions going to the merits, and his request for injunctive relief must fail.

On its face § 3234 pertains exclusively to "[e]very group or blanket policy *issued or issued for delivery in this state* which provides benefits by reason of the disability of the insured." NY Ins. Law § 3234(a) (emphasis added). Thus, by its plain language § 3234(a)(2) does not apply extraterritorially. The Policy at issue here was issued to Woloshin's California employer, Memec, and delivered in Florida. (Shephard Aff. at ¶6; Ex. 1 at Face Page). Furthermore, the Policy contains an explicit choice of law provision providing: "This policy will be construed in line with the law of the jurisdiction in which it is delivered." (Shephard Aff. at ¶ 6; Ex. 1 at Face Page). Thus, Florida law[9] governs the Policy, and Woloshin's claims under New York law must fail.

Woloshin cannot claim § 3234(a)(2) applies to the Policy simply because he is a New York resident. It is true that under New York law, certain limited types of insurance policies are deemed to have been delivered in the state of New York because they provide coverage to a New York resident. *See* NY Ins. Law § 3201(b)(1). The Policy is specifically excepted from this provision. Section 3201(b)(1) states in pertinent part that:

> (b) (1) . . . A group life, group accident, group health, group accident and health or blanket accident and health insurance certificate evidencing insurance coverage on a resident of this state **shall be deemed to have been delivered in this state**, regardless of the place of actual delivery, **unless the insured group is of the type described in**: . . . (B) **section four thousand two hundred thirty-five** **except subparagraph (D)** where the group policy is issued to a trustee or trustees of a fund established or participated in by two or more employers not in the same industry with respect to an employer principally located within the state, **subparagraph (K), (L) or (M)** of paragraph one of subsection (c) thereof

---

[9] There is no Florida corollary to § 3234(a)(2).

NY Ins. Law § 3201(b)(1) (emphasis added). New York Insurance Law § 4235 broadly covers "group accident and health insurance," a category that includes group disability policies such as the Policy. *See* NY Ins. Law § 4235(a)(2). Thus, under § 3201(b)(1)(B), the Policy is specifically excepted from being "deemed delivered" in New York. Furthermore, Woloshin has admitted in the Second Amended Complaint that the Policy is a group disability policy issued to his employer, Memec, for the benefit of its employees. *See* NY Ins. Law § 4235(c)(1)(A); (Second Am. Complt. ¶¶ 8-10).[10] Accordingly, Woloshin cannot argue that the Policy is one of the types of policies described in § 4235(c)(1)(D), (K), (L), or (M). Since the Policy does not fall within one of the exceptions to the exception in § 3201(b)(1)(B), it is specifically excepted from being deemed delivered in New York. Woloshin, therefore, cannot claim his Florida policy is governed by New York law.

Woloshin will undoubtedly argue that the district court in *Benesowitz* determined that § 3234(a)(2) applied to that plaintiff's policy even though it was delivered in Delaware. *See Benesowitz v. Metro. Life Ins. Co.*, 386 F. Supp. 2d 132, 136 (E.D.N.Y. 2005). *Benesowitz* is entirely distinguishable. In *Benesowitz*, the court found that none of the exceptions to § 3201(b)(1) applied.[11] Here, Woloshin has made binding judicial admission of facts establishing that the Policy cannot be deemed delivered in New York under § 3201(b)(1).[12]

---

[10] *See also* Affidavit of Mark Otis ¶ 5, attached herewith at Ex. E. The allegations in Second Amended Complaint are judicial admissions by Woloshin and he must be bound by them. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admission[s]' by which Color Tile Committee was 'bound throughout the course of the proceeding.'" *quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (party cannot contradict its own pleading with affidavits) and *citing Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts" and "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible") (internal quotation marks omitted).

[11] It is unclear from the *Benesowitz* court's decision whether this finding was correct. MetLife relied simply on the plain language of § 3234(a)(2) to support its argument that the statute did not apply because the policy was delivered

Similarly, any claim by Woloshin that the place of delivery and choice of law terms in the Policy do not apply to him because they were not articulated in his Summary Plan Description ("SPD") also must fail. Under ERISA and its implementing regulations, such traditional contract terms are not required inclusions in an SPD as they do not pertain to eligibility for benefits, the claims or appeals process or the circumstances that may result in a claims denial. *See* 29 U.S.C. § 1022(a)(1); 29 C.F.R. 2520.102-3(j)(2), 29 C.F.R. 2520.102-3(*l*); *see also Tocker v. Philip Morris Cos.*, 470 F.3d 481, 488 (2d Cir. 2006). The omission of these terms from the SPD, therefore, would not entitle Woloshin to relief.[13] Furthermore, nothing can change the fact that the Policy was delivered in Florida rather than New York and, therefore, New York law does not apply.

In sum, because the Policy was not delivered in New York and is cannot be deemed to have been delivered in New York, Woloshin's claims under § 3234(a)(2) must fail. Thus, Woloshin cannot show a likelihood of success on the merits, as he is demonstrably not entitled to

---

in Delaware rather than New York. Benesowitz countered that, because he was a New York resident, the policy was "deemed delivered" in New York under § 3201(b)(1) and baldly asserted without analysis that none of the exceptions in subparagraphs (A), (B), or (C) applied. MetLife did not counter this assertion in its Reply, and presented no evidence in support of its earlier position, effectively abandoning its argument that § 3234(a)(2) did not apply. In its decision, the court stated simply that "[t]he insured group (i.e. Honeywell employees) is not described in any of the exemptions" in § 3201(b)(1). *Benesowitz*, 386 F. Supp. 2d at 136. It is thus impossible to know whether the policy in *Benesowitz* was issued to one of the non-traditional groups described in § 4235(c)(1)(D), (K), (L) & (M), excepting it from the exception in § 3201(b)(1)(B). What is clear, is that the Policy at issue here was not issued to one of these non-traditional groups and fits squarely within the exception to deemed delivery in § 3201(b)(1)(B).

[12] See also Otis Aff. at ¶ 5.

[13] Even if ERISA did require the inclusion of place of delivery and choice of law terms in an SPD, and if Woloshin's SPD did not include these terms, he still could not show that he was "*likely* to have been harmed" by their absence. *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 113 (2d Cir. 2003) (emphasis in original). To make that showing, he would have to provide evidence that, if the terms had been included, he would have acted differently in a way that would have entitled him to benefits. *See Exarhakis v. Visiting Nurse Service of New York*, No. 02-CV-5562, 2006 U.S. Dist. LEXIS 5360, at *38 (E.D.N.Y. Feb. 13, 2006); *Sheehan v. Metropolitan Life Insurance Co.*, 368 F. Supp. 2d 228, 262 n.22 (S.D.N.Y. 2005). In this case, Woloshin would have to show: (1) he knew in 2004 about New York Insurance Law § 3234(a)(2) and that Florida law had no such provision; (2) he anticipated the Court of Appeals' 2007 ruling in *Benesowitz*; and (3) he would have changed jobs to work for an employer whose policy had been delivered or would be deemed delivered in New York. Woloshin cannot, in good faith, make the necessary allegations, or provide the evidentiary support for such allegations.

any of the relief he seeks in his Second Amended Complaint. In fact, Woloshin can show no chance of success on the merits of his claim. It follows that he cannot show that there exists sufficiently serious questions going to the merits to make them a fair ground for litigation. *See Tully v. Orr*, 608 F. Supp. 1222, 1226-27 (E.D.N.Y. 1985) ("My conclusion that plaintiff has almost no chance of success on the merits compels a finding that plaintiff has not raised sufficiently serious questions going to the merits to make them a fair ground for litigation."). Under either standard, his request for injunctive relief must be denied.

### 2. Woloshin Will Suffer No Irreparable Harm Should the Court Deny His Request for Injunctive Relief

"[T]he threat of irreparable harm is a necessary precondition to the granting of *any* preliminary injunctive relief." *New York v. Nuclear Regulatory Com.*, 550 F.2d 745, 750 (2d Cir. 1977) (emphasis in original); *Dopp v. Franklin National Bank*, 461 F.2d 873, 878 (2d Cir. 1972) (holding, a movant's "inability to prove irreparable injury is in itself sufficient grounds for [denying] the grant of the preliminary injunction."). To satisfy this standard, Woloshin must demonstrate "that absent a preliminary injunction [he] will suffer 'an injury that is neither remote nor speculative, but actual and imminent.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005). He cannot satisfy this standard. If this Court declines to grant injunctive relief, the Notice will remain posted and Aetna will continue its review of previously denied claims. If, after its review, Aetna determines a claimant is eligible for benefits, he or she will receive benefits.[14] If a claimant is determined ineligible, he or she will receive a letter from Aetna so stating and providing the right to appeal as dictated by ERISA, (Laughran Aff. at ¶ 7), and the individual will be in no worse position at that point than he or she is in currently. Simply put,

---

[14] Affidavit of Deborah F. Laughran ¶ 7, attached herewith at Ex. F.

Woloshin and the other alleged class members will not be harmed, let alone irreparably so, by these activities. To the extent Woloshin is concerned that, if the class is conditionally certified[15] and class notice is sent, some class members outside the province of Aetna's re-review might opt out of the class because they believe Aetna will be reviewing their claims, any such confusion can be addressed in the class notices. Furthermore, this potential "injury" is entirely speculative, rather than actual and imminent.

In sum, the Court must deny Woloshin's request for injunctive relief because he has not made and cannot make the requisite showing.

### B. Woloshin Cannot Establish a "Clear Record" of Abuse or Threatened Abuse To Warrant Relief Under Fed. R. Civ. Proc. 23(d)

A movant bears the burden of establishing a "clear record and specific findings" that certain communications with putative class members are misleading, coercive or otherwise threatening to the purposes of Rule 23 in order to enjoin or restrict such communication. *Gulf Oil Co. v. Bernard*, 425 U.S. 89, 101-02 (1981). Woloshin argues that Aetna is "improperly contacting absent putative Class members in an attempt to mislead Class members into settling plaintiff's claims for inadequate consideration." (Pl. Application at 3) (emphasis added.) Woloshin has failed to present any evidence, let alone a clear and specific record, demonstrating that Aetna's communications with claimants are improper, misleading or an attempt to settle for inadequate consideration. Woloshin fails in this regard because there is no such evidence. Aetna is making no attempt to settle any claims of putative class members, but is contacting them only to fairly re-review their claims, in accordance with the DOI directive. (Laughran Aff. at ¶¶ 4-5 ).

---

[15] It is unlikely that the purported class would be certified because in order for any member of the class to be eligible for benefits, his or her claim will have to be individually evaluated to determine whether he or she meets the policy definition of total disability, and such individual examination of each claim outweighs any common issues applicable to the entire class.

Woloshin's inability to present adequate evidence is fatal to his claims and the Court must deny his request for injunctive relief.

        **1.**        **Aetna Has Both the Right and the Obligation to Communicate With Plan Participants**

Without citing a single authority, Woloshin makes the bold assertion that Aetna should have sought Court approval prior to contacting putative class members through its website. (Application at 6). Aetna needs no permission from the Court or class counsel, however, to communicate with potential class members in the ordinary course of its business, where, as here, the class has not been certified.[16] Moreover, the Second Circuit has made clear that pre-certification communications between opposing counsel and putative class members are permissible, even where the communications include settlement negotiations.[17] Aetna's Notice, which does not reference a settlement or compromise of any kind, is *a fortiori* a permissible form of communication with class members prior to class certification.

The record demonstrates that Aetna's Notice is not only an ordinary business communication, but also is in direct response to the Circular Letter. In an effort to guide insurance companies in their attempts to implement the *Benesowitz* decision, the DOI issued a Circular Letter on December 14, 2007, instructing Aetna and other insurers to:

> No later than 30 days from the date of this Circular Letter…provide notice on its website of the import of the Court of Appeal's *Benesowitz* decision, and explain which insureds are eligible to have their previously denied claims reviewed…The

---

[16] *See* Newberg on Class Actions § 15:14, pg. 55 (4th Ed. 2002) ("In the absence of a local court rule or a pretrial order prohibiting or restricting communications by the defendants with the absent class members, the defendants may continue to communicate in the ordinary course of business with members of the class" prior to certification); *Rankin v. Bd. of Educ. of the Wichita Public Schools*, 174 F.R.D. 695, 697 (D. Kan. 1997) (finding that absent evidence of abusive practices, the defendant can continue to communicate with prospective class members so long as the communication is made in the ordinary course of business "even though such communications may necessarily implicate the subject matter of the litigation").

[17] *See Ralph Oldsmobile Inc. v. General Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893, at*19 (S.D.N.Y. Sept. 7, 2001) (citing *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 213 (2d Cir. 1987); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 773 (2d Cir. 1972)).

information posted on the website should remain conspicuous and prominently
posted and accessible to insureds until at least December 21, 2008.

(Ex. B at 3.)  On January 14, 2008, within the thirty day period prescribed by the DOI, Aetna

conspicuously posted its Notice addressing the *Benesowitz* decision and informing claimants of

the claims reassessment.  The Notice contains the exact information required by the Circular

Letter, including, specifically, an explanation of *Benesowitz*, notice of the automatic claims

reassessment, and notice that Aetna will be contacting affected claimants.  (Notice, Ex. C; *see*

Circular Letter, Ex. B at 2-3).  In addition, the Notice includes Aetna's contact information in

accordance with the Circular Letter's direction that "[t]he posting should…advise any affected

insureds about how to contact the insurer about re-examining a disability claim." (Ex. B at 3.)

Aetna's Notice, therefore, is clearly the result of the Circular Letter rather than any threat of class

litigation.

Ordering Aetna to remove its Notice regarding *Benesowitz* and prohibiting it from

communicating further with claimants would unnecessarily interfere with Aetna's business and

would be tantamount to an order requiring that Aetna blatantly disregard a DOI directive.[18]

Woloshin should not be allowed to recruit the Court to stand between Aetna and Aetna's

obligations under the Circular Letter and ERISA simply by virtue of having filed a proposed

class action, especially where the claim has no merit, the proposed class is unlikely to be

---

[18] Woloshin makes much of the fact that Aetna's Notice evidences its intention to make further contact with
claimants by April 30, 2008 and that Aetna has provided a toll free contact number. (*See* Application at 11.)  In so
arguing, Woloshin misleads this Court by failing to quote ALL of  the actual wording of the Circular Letter, which
expressly directs Aetna to "[b]y April 30, 2008...make a good faith effort to notify all affected insureds in writing of
the results of [the claims] review'' and to include on its website information about how "affected insureds...[can]
contact the insurer about re-examining a disability claim previously denied. . . .'' (Circular Letter at 2-3.)  Further,
Woloshin's argument belies logic.  Obviously, if Aetna is conducting a reevaluation of previously denied claims, it
will, at some point, become necessary to inform claimants of the result.  Similarly, claimants receiving notice of
Aetna's claims review will necessarily have questions, specifically questions about whether their claim will be
subject to review.  It makes no sense, and serves no purpose, to deny claimants access to information about Aetna's
review. Class counsel has no protected interest in being a middleman between Aetna and beneficiaries simply by
virtue of having prematurely filed this purported class action.

certified and Woloshin is not an adequate representative.  By granting Woloshin his requested

relief, this Court would be preventing Aetna from complying with its statutory duties and would

essentially be circumventing and preempting the DOI, the very department designed to regulate

New York insurers and interpret New York insurance law. *See, e.g.*, *Ostrer v Schenck*, 41

N.Y.2d 782 (1977) (recognizing the Superintendent's broad authority to interpret and implement

legislation).  Woloshin's Application presumes that litigation is the superior method of resolving

claims following Benesowitz, even though the DOI has stated otherwise.  Nothing in Woloshin's

Application comes close to justifying this type of imposition on the Court or intrusion into

Aetna's communications with affected parties.  Aetna must be permitted, therefore, to carry on

its business and contact the affected parties through its Notice and other media.

### 2. Aetna's Communication with Putative Class Members is Not Misleading, Coercive or Otherwise Improper

Woloshin also has failed to demonstrate a clear record of coercive or misleading conduct

on the part of Aetna to warrant the relief he seeks. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102

(1981) (noting that the moving party has the burden of establishing "a specific record showing

…of the particular abuses by which it is threatened"); *Jenifer v. National Solid Waste Mngt.*

*Assoc.*, Nos. 98-270/98-565 MMS,1999 U.S. Dist. LEXIS 2542, *16 (D. Del. Feb. 25,1999)

(noting that the plaintiff must "provide the Court with a clear record to show that the

communications were misleading or coercive, or an improper attempt to undermine Rule 23 by

encouraging putative class members not to join suit").  Instead, Woloshin relies entirely on

inapposite case law involving releases, settlements or communications specifically designed to

discourage class members from joining in a class action.  The only evidence presented to the

Court establishes that Aetna has agreed, consistent with the Circular Letter, to **review** claims, ***not***

to settle them.  Similarly, Aetna's notice makes no mention of the litigation or the merits of the

class claims so as to be considered threatening or an attempt to discourage class participation.  It is difficult to imagine, therefore, how the Notice, which complies with the Circular Letter and makes no mention of the class litigation, could present a cognizable threat of coercion.

> i.  Aetna's Notice Is Not a Settlement Offer Nor Does it Contain Release Language

Woloshin's reliance on *Ralph Oldsmobile v. General Motors Corporation* and *Jenifer v. National Solid Waste Management Association* is completely misplaced.  Both *Ralph Oldsmobile* and *Jenifer* involved communications expressly designed to obtain settlements and releases without notifying the potential class members of the existence of the class.[19]  Under these circumstances, the courts found the release language misleading because the claimants were not fully aware of the claims they were relinquishing.  *Ralph Oldsmobile Inc. v. General Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893, at*19 (S.D.N.Y. Sept. 7, 2001); *Jenifer,* 1999 U.S. Dist. LEXIS 2542, at *24-25 (stating that "putative class members should know the essence of the claims they would be giving up in response to the solicitation of the [defendant]").[20]

Aetna's Notice is not a settlement offer, nor does it contain release language.  The key word, in fact, is notice.  Aetna is simply attempting to notify certain participants that they may be entitled to have their claims denial re-reviewed.  Indeed, Aetna's Notice makes clear that not all of the claims subject to reassessment will necessarily be paid if they are deniable on some

---

[19] *See Ralph Oldsmobile, Inc.*, 2001 U.S. Dist. LEXIS 13893, at *5-6 (involving defendant's ability to obtain releases from putative class members and the content of such releases); *Jenifer,* 1999 U.S. Dist. LEXIS 2542, at *5-6 (discussing whether the release language in defendant's pricing contract was misleading).

[20] Woloshin's reliance on *In re School Asbestos Litigation* is similarly misplaced since that case addressed the defendants' communications with members of a certified class, rather than with members of a putative class.  842 F.2d 671, 674 n.1 (3d Cir. 1988).  The Court's ability to restrict a defendant's communication with actual class members is greater than its ability to restrict communications with putative class members. *See Gulf Oil Co.*, 452 U.S. at 101-02 (requiring a clear record showing a need to limit communications between parties and potential class members); Newberg on Class Actions, § 15:14 (4th Ed. 2002) (stating that defendants can communicate with putative class members in the ordinary course of business).

ground other than the pre-existing condition exclusion. (Notice, Ex. C ("[A]ll applicable policy provisions, limitations and exclusions will apply for any re-examined claim to the extent not prohibited by the *Benesowitz* decision.")). Aetna will review the relevant claims files, obtain additional information from claimants to the extent needed for that review, determine if the claimants are disabled, and award benefits where appropriate. (Laughran Aff. at ¶ 7). That some prospective class members may have their claims reassessed and may actually receive benefits does not, contrary to Woloshin's assertion, transform a proper communication into an improper communication simply because the class size may decrease.[21] It is indeed the purpose of *Benesowitz* and the intent of the Circular Letter to ensure that claimants receive benefits that were previously denied.

        ii.    <u>Aetna's Notice Does Not Discourage Participation in Plaintiff's Class Action Nor Is It Threatening In Any Manner</u>

Aetna's Notice makes no reference to the purported class action litigation and is informative, rather than persuasive, in nature. The sole purpose of the Notice is to provide participants with information about Aetna's claim reassessment process as directed by the Circular Letter. Thus, Woloshin's reliance on cases involving a defendant's intentional and threatening attempts to thwart a pending class action is unavailing. In fact, the cases Woloshin relies upon actually highlight how benign and harmless Aetna's Notice is in practice. In *In re Currency Conversion Fee*, for instance, certain defendants required cardholders to enter into

---

[21] Prior to class certification, defendants cannot be prohibited from settling with putative members even though such settlements may diminish or eliminate the class. As the court in *Weight Watchers* noted:

        Even if defendant should succeed in settling with so many [members of the putative class] that the court will be forced to deny class action status, plaintiff's complaint will remain untouched…F.R.Civ. P. 23(e), requiring court approval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect upon the rights of others.

455 F.2d at 775.

arbitration agreements after a cardholder class action had been filed, thereby attempting to preclude the cardholders from joining in the pending litigation. *In re Currency Conversion Fee*, 224 F.R.D. 555, 569 (S.D.N.Y. 2004). The court in *Currency* stated that "[w]hen a defendant contacts putative class members solely for the purpose of altering the status of the pending litigation, such communication is improper without judicial authorization." *Id.* (finding the arbitration agreements unenforceable). The court's holding was influenced, in large part, by the defendants' improper motive of stifling the class action and limiting the remedies available to cardholders. *Id.* at 570.

Similarly, in *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, the court considered whether the defendant's letters to putative class members were coercive where they referenced, for example, the "enormous potential cost to your Company due to this class action" and the "[t]eams of lawyers [that] will be required, all at a huge cost." 156 F.R.D. 630, 631 (N.D. Tex. 1994). The defendant's communications also suggested that companies not join the lawsuit for fear that the defendant's rising business costs would ultimately be passed on to the class members: "By asking you to join the class, Hampton is asking you to sue yourself." *Id.* at 632. The court concluded that the defendant's attempts to "reduce the class members participation in the lawsuit based on threats to their pocketbook" were improper. *Id.* at 633.

The distinction between the defendants' coercive actions in *Currency* and *Hampton Hardware* and Aetna's notification of a claims review is readily apparent. Most obviously, Aetna undertook to communicate with policy beneficiaries at the direction of the DOI, not at its own initiative in an effort to thwart litigation against it. Moreover, not only has Aetna not entered into, or even sought, any agreements with putative class members, it has not referenced the litigation or asserted any position with respect to the litigation in its communications.

-18-

Aetna's actions here are more akin to the type of communication in *Rankin v. Board of Education of the Wichita Public Schools*, 174 F.R.D. 695, 697 (D. Kan. 1997). There, the defendants sent a letter to parents regarding the Board of Education's failure to provide certain speech-language services after a class action had already been filed on that issue, but before the class had been certified. *Id.* The defendants' letter acknowledged that speech-language services were not provided during the 1996-97 school year and stated that make-up speech-services would be provided during the summer of 1997. *Id.* As to the prospective class members, the court held that the plaintiffs had failed to make a showing that the letter was an abusive action that required court intervention. *Id.* According to the court, the offer to provide the necessary services was not improper, even though the services were the subject of the litigation and the Board of Education acknowledged that the communication was in response to the lawsuit. *Id.*

Here, as in *Rankin*, Woloshin has failed to present evidence that Aetna's communication is in any way improper or abusive. In fact, should Aetna be forced to comply with Woloshin's claim for relief and reference the litigation in its Notice and other communications, this would, according to the court in *Rankin*, actually increase the chance of abuse. *Id.* ("There is no legitimate purpose for defendants to communicate with prospective members of the class concerning the lawsuit; such communication could invite abuse…. The only limitation on the defendants is that such communication not *expressly* refer to the litigation.").

        iii.     <u>Aetna's Notice Accurately Describes *Benesowitz*</u>

In addition to citing inapposite case law, Woloshin grossly mischaracterizes the substance of Aetna's Notice by claiming that it does not properly inform potential class members of the significance of the *Benesowitz* decision. Specifically, Woloshin argues that the statement in Aetna's Notice that "all applicable policy provisions, limitations and exclusions will apply for

any re-examined claim to the extent not prohibited by the *Benesowitz* decision" is ambiguous because it does not indicate what is or what is not prohibited by *Benesowitz*. (Pl. Application at 9.)   But Woloshin purposefully ignores the paragraph immediately preceding this language, which specifically articulates the holding from *Benesowitz*, stating:

> In *Benesowitz*, the court interpreted the New York pre-existing condition statute to mean that an insurance policy may impose a 12-month waiting period during which no benefits will be paid for a disability resulting from a  pre-existing condition and arising in the first 12 months of coverage.  The policy, however, may not permanently deny benefits because of a pre-existing condition.

(Notice, Ex. C)   This paragraph was pulled nearly word for word from the *Benesowitz* decision, wherein the New York Court of Appeals held "New York Insurance Law § 3234 (a) (2) means that a policy may impose a 12-month waiting period during which no benefits will be paid for a disability stemming from a preexisting condition and arising in the first 12 months of coverage," *Benesowitz*, 8 N.Y.3d at 670, and concluded that § 3234 (a)(2) "allows insurers to toll benefits during the first 12 months of coverage, but does not permit them to impose an absolute bar to coverage for disabilities stemming from preexisting conditions and arising during that 12-month period." *Id.*  at 664.  Thus, when read in its entirety, rather than as selectively as Woloshin reads it, Aetna's Notice unambiguously and explicitly states *exactly* what is and what is not prohibited by *Benesowitz*.  Woloshin's suggestion otherwise borders on mendacity.

iv.    <u>Aetna's Notice Poses No Risk of Coercion</u>

Woloshin argues that there is some inherent threat of coercion in Aetna's Notice based solely on the on-going relationship between Aetna and participants.  There must be some recognizable threat other than the mere fact of a business relationship, however, for Woloshin to obtain injunctive relief and interfere with Aetna's right to communicate in the ordinary course of its business with claimants. *See, e.g., Jenifer*, 1999 U.S. Dist. LEXIS 2542, at *16-17 (noting the

plaintiff's failure to prove coercion despite the presence of an on-going business relationship where the defendants simply provided potential class members with a business proposition that the members were free to reject).  As discussed above, Woloshin cannot show that Aetna's Notice was anything other than just that, a notice.  There is no offer of compromise and Aetna's agreement to conduct a claims review is not conditional in any manner.  The Notice is devoid of anything that could "overpower[] the free will" of a claimant or make the claimant feel pressured into contacting or entering into an agreement with Aetna. *See id.*, at *16.

Moreover, Aetna must properly administer claims.  In light of *Benesowitz*, Aetna will be reviewing the claim files and determining whether or not to award benefits based on the claimant's disability status. (Laughran Aff. at ¶¶ 4, 7).  Unlike the car manufacturer in *Ralph Oldsmobile* or the distributor in *Hampton Hardware* that can decide not to conduct business with those who partake in a class action lawsuit, Aetna has no choice but to award benefits if the claimants are deemed disabled. *Cf. Ralph Oldsmobile, Inc.*, 2001 U.S. Dist. LEXIS 13893, at *11-12 (stating that the plaintiff's "continued success, and, indeed, existence may depend upon GM's good will"); *Hampton Hardware, Inc.*, 156 F.R.D. at 633-34 (noting the risk of coercion where the plaintiff relies on the defendant for pricing information).  The risk of coercion, therefore, is nonexistent given Aetna's contractual obligations to plan participants.

### C.    Woloshin's Proposed Relief Is Over Broad and Designed Only to Serve His Class Action Efforts

In addition to enjoining communications between Aetna and claimants, Woloshin seeks an order from this Court that Aetna modify its Notice to include a detailed reference to this litigation and/or an order appointing an impartial monitor to conduct essentially a second re-review of the claims files. (*See* Pl. Application at 14.)  Woloshin's claims, however, are simply transparent attempts to have Aetna notify the proposed class and interject himself and class

counsel into the process of actually determining disability benefits, which is outside the scope of this litigation and the *Benesowitz* decision.

Aetna should not be forced to modify its Notice to address the proposed class because the Notice is directed to more than just proposed class members. Indeed, Aetna's Notice is directed to all claimants under policies governed by New York law who have had their claims denied over the last two to three years based on a pre-existing condition. Forcing Aetna to amend its Notice, therefore, is an overly broad remedy that is not justified here. *See In re Asbestos*, 842 F.2d at 684 (noting that an order regulating speech designed to reach both class and non-class members is overly restrictive of the defendants' free speech rights). Moreover, requiring Aetna to issue any statement that specifically references this purported class litigation is tantamount to requiring that Aetna notify the proposed class. Such an action is improper because the class has not been certified and no notice is yet required under the Federal Rules. In addition, assuming the class is certified at some point, and notice is directed by the Court, it will be Woloshin's burden to notify class members of their rights, not Aetna's.[22] Woloshin's proposed revisions to Aetna's Notice, therefore, are premature and seek to impose an improper burden upon Aetna.

Most perplexing, however, is Woloshin's request that the Court appoint an impartial monitor to review the claims files and calculate benefits. This request is wholly outside the scope of Woloshin's Application, which relates specifically to the communication between Aetna and members of the proposed class. The actual determination of benefits has no relation either to *Benesowitz* or to Woloshin's proposed class action. *Benesowitz* does not address an insurer's actual disability determination; it simply states that, under § 3234 (a)(2), pre-existing condition exclusions cannot impose a complete bar to benefits.

---

[22] *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978) ("The general rule must be that the representative plaintiff should perform the tasks [necessary to send the class notice], for it is he who seeks to maintain the suit as a class action and to represent other members of his class.").

Moreover, to inject a third party monitor into the disability review process would be entirely inconsistent with the statutory structure of ERISA, which contemplates a two-part review process including an administrative review and appeal to the claim administrator and a judicial review by a federal district court.  Where a plan contains an express reservation of discretion, as does Woloshin's, courts will review the administrator's decision under the highly deferential arbitrary and capricious standard of review and cannot substitute their decisions for those of the administrator.  *Celardo v. GNY Automobile Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003).  Thus, it is clear ERISA does not contemplate a third-party monitor performing a contemporaneous comprehensive "review" affording no deference to Aetna's disability determinations.  To appoint such a third party monitor would usurp Aetna's role as a Claim Administrator and would go far beyond the purported justifications for plaintiff's motion. *See Peterson v. Continental Cas. Co.*, 282 F.3d 112, 118 (2d Cir. 2002) (holding the district court "exceeded its jurisdiction when it rendered a determination as to [plaintiff's] eligibility for permanent benefits.").[23]

## CONCLUSION

Based on the foregoing, Woloshin's Application must be denied.  Woloshin has not, and cannot, establish a likelihood of success on the merits or irreparable harm.  Furthermore, Woloshin has failed to demonstrate how Aetna's Notice, that complies with the DOI requirements and makes no representations about the class litigation, could be considered abusive or pose a threat to the purposes of Rule 23(d). Aetna must therefore be allowed to

---

[23] The Second Circuit, in *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006), departed from *Peterson's* treatment of exhaustion as "jurisdictional," and instead held that failure to exhaust administrative remedies is an affirmative defense.  *Paese* did not, however, disturb the underlying rule of law from *Peterson*, that it is impermissible for the district court to determine a claimant's eligibility for disability benefits prior to a determination by the claim administrator.  *See Novella v. Empire State Carpenters Pension Fund*, No. 05 Civ. 2079, 2007 U.S. Dist. LEXIS 63540, at *9 (S.D.N.Y. Aug. 28, 2007) (holding Paese "does not remove the requirement that the plaintiff exhaust his administrative remedies.").

continue communicating with claimants in an effort to comply with New York insurance law and

the DOI's directive.

Dated: Hartford, Connecticut
       February 27, 2008

DEFENDANT, AETNA LIFE INSURANCE
COMPANY

By  /s/ James H. Rotondo        
     James H. Rotondo (JR-3966)
     jhrotondo@daypitney.com
     Day Pitney LLP
     242 Trumbull Street
     Hartford ,Connecticut 06103-1212
     (860) 275-0197
     (860) 881-2470 fax

     Jonathan Matthew Borg (JB-9487)
     jborg@daypitney.com
     Day Pitney LLP
     7 Times Square
     Times Square Tower
     New York, New York 10036
     (212) 297-5800
     (212) 682-3485 fax
     Its Attorneys

### **CERTIFICATION**

     I hereby certify that on this date a copy of foregoing Response to the Order to Show Cause was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court' s CM/ECF System.

           /s/ James H. Rotondo      
          James H. Rotondo (JR-3966)