UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN WOLOSHIN, individually and on behalf of all others similarly situated, | Civil Action No. 07 CV 6664(KMK) |
| Plaintiff, | Magistrate Judge Yanthis |
| vs. | ECF Case |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF
APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT
SHOULD NOT BE IMMEDIATELY AND PERMANENTLY ENJOINED FROM
EX PARTE COMMUNICATIONS WITH ABSENT CLASS MEMBERS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ...................................................................................................1

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT ...........................................................................................................2

    I.      PLAINTIFF HAS STATED A CLAIM FOR RELIEF ........................2

    II.     PLAINTIFF HAS SET FORTH THE APPROPRIATE
           STANDARD ..........................................................................................4

           A.     Cases Cited by Defendant are Distinguishable ...........................5

           B.     The Communications in Question are
                  Misleading and Ripe for Abuse ...................................................8

    III.    PLAINTIFF SATISFIES THE REQUIREMENTS OF AN
           INJUNCTION ......................................................................................10

CONCLUSION ......................................................................................................11

**TABLE OF AUTHORITIES**

Page

## CASES

Benesowitz v. Metro. Life Ins. Co.,
8 N.Y.3d 661, 870 N.E.2d 1136, 2007 N.Y. LEXIS 1618 (N.Y. 2007)..........1, 3, 8, 10

Covino v. Patrissi,
967 F.2d 73 (2d Cir. 1992)......................................................................................10

Haffer v. Temple Univ. of the Commonwealth Sys. of Higher Educ.,
115 F.R.D. 506 (E.D. Pa. 1987)................................................................................11

Hampton Hardware, Inc. v. Cotter & Co., Inc.,
156 F.R.D. 630 (N.D. Tex. 1994)........................................................................5, 6, 9

In re "Agent Orange" Product Liability Litigation,
996 F.2d 1425 (2d Cir. 1993)..................................................................................2, 5

In re Currency Conversion Fee Antitrust Litig.,
224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................1, 5, 6, 7

In re School Asbestos Litig.,
842 F.2d 671 (3d Cir. 1988)......................................................................................7

In re Warner Comm. Sec. Litig.,
798 F.2d 35 (2d Cir. 1986)........................................................................................5

Jenifer v. Del. Solid Waste Auth.,
No. 98-270 MMS, 1999 U.S. Dist. Lexis 2542 (D. Del. Feb. 25, 1999)..................5, 11

Ralph Oldsmobile Inc. v. Gen. Motors Corp.,
No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893
(S.D.N.Y. Sept. 7, 2001).................................................................................5, 7, 9, 11

Shore v. PaineWebber Long Term Disability Plan,
No. 04-cv-4152, 2007 U.S. Dist. LEXIS 77039 (S.D.N.Y. Oct. 15, 2007)................3, 4

Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.,
455 F.2d 770 (2d Cir. 1972).....................................................................................5, 6

## STATUTES

Fed. R. Civ. P. 23(d) .................................................................................................1, 5

NY Ins. Law § 3201(b)(1) ........................................................................................3, 4

## INTRODUCTION

Plaintiff Brian Woloshin ("Plaintiff") respectfully submits this reply brief in further support of his application to show cause why Aetna Life Insurance Company ("Aetna" or "Defendant") should not be immediately and permanently enjoined from conducting unsupervised ex parte communications with absent Class members.

## PRELIMINARY STATEMENT

As plainly stated in Plaintiff's Application, Plaintiff is requesting that the Court exercise its authority pursuant to Fed. R. Civ. P. 23(d) and the inherent powers of the Court, and thereby regulate Aetna's ex parte communications with absent Class members during the pendency of the Action. See In re Currency Conversion Fee Antitrust Litig., 224 F.R.D. 555, 569 (S.D.N.Y. 2004) (Pauley, J.). Plaintiff is not seeking a preliminary injunction as Aetna contends, even though he has satisfied the standard as set forth below.

Aetna argues that Plaintiff and other similarly situated Class members are not eligible for benefits under Benesowitz v. Metropolitan Life Insurance Company, 8 N.Y.3d 661, 870 N.E.2d 1136, 2007 N.Y. LEXIS 1618 (N.Y. 2007), because Plaintiff's disability policy was not "delivered" in New York and the choice of law provision in Plaintiff's policy states that the law of the state of delivery will govern. Remarkably, Aetna then argues that the summary plan description ("SPD") -- the only document that Aetna ever provided to Plaintiff -- need not have contained the "delivery" and "choice of law" provisions contained in the policy at issue because these provisions "do not pertain to eligibility of benefits." Dft's Brf., p. 10. Aetna's juxtaposition of these two

irreconcilable arguments is glaring further proof that Aetna has no intention of dealing with absent Class members honestly and fairly.

Defendant also argues that its <u>ex parte</u> communications with absent Class members is permissible here because Aetna was compelled to issue the "Important Notice Concerning New York Disability Claims and Pre-existing Conditions" (the "Notice") by the New York Department of Insurance ("DOI"). Defendant again misses the point – the DOI did not relieve Aetna of its obligation to seek leave of the Court before it issued these communications.

Thus, the question remains, who will safeguard the interests of Plaintiff and the absent Class members? The Second Circuit has answered this question -- it is the Court's responsibility. <u>See</u> <u>In re "Agent Orange" Product Liability Litigation</u>, 996 F.2d 1425, 1438 (2d Cir. 1993) ("A judge in a class action is <u>obligated</u> to protect the interests of absent class members").

Therefore, this class action is the only mechanism for ensuring that Aetna will not coerce and mislead absent Class members into foregoing their right to recover millions of dollars in disability benefits that were previously wrongly denied them by Aetna.

## ARGUMENT

### I.   PLAINTIFF HAS STATED A CLAIM FOR RELIEF

Defendant incorrectly argues that Plaintiff Woloshin lacks standing to assert the claims alleged on behalf of himself and fellow Class members because the long-term disability policy issued to Plaintiff's employer, Memec (a California company), for the benefit of Plaintiff (a New York resident), is not governed under New York law because the policy was "delivered" in Florida and a choice of law provision in the policy states

2

that the law of the state of delivery will govern. Dft's Br., pp. 7-11.[1] Therefore, according to Aetna, NY Ins. Law and the holding of Benesowitz do not control.

In the same breath, however, Aetna concedes that the "choice of law" and "delivery" provision contained in Plaintiff's and similarly situated Class members' disability insurance policies were unknown to Plaintiff and Class members because Aetna did not deliver the disability policies to Plaintiff or Class members. Dft's Br., p. 10. Rather, Aetna only delivered SPDs (or other summary information) to Plaintiff and his fellow Class members, which did not contain either the "choice of law" or the "delivery" provisions contained in the disability insurance policies at issue here. See Dft's Br., Ex. C. (Shephard Aff., Exhs. 1-3). Aetna's failure to communicate these two clearly material policy provisions to Plaintiff and Class members, however, renders Aetna's reliance on such provisions without merit.

As this Court recently recognized in Shore v. PaineWebber Long Term Disability Plan, No. 04-cv-4152, 2007 U.S. Dist. LEXIS 77039 at *24-25 (S.D.N.Y. 2007), the SPD must contain all of "'the circumstances which may result in disqualification, ineligibility or denial or loss of benefits," and "any benefit forfeiture clause not found in the SPD cannot be enforced against any policyholder under the policy." The delivery provision found in Plaintiff's policy, and the policy provision that states that the policy is to be construed in line with the law of the state of delivery (here Florida), both clearly effect Plaintiff's and Class members' eligibility for benefits as much as the statute of limitations

---

[1] Aetna has deliberately mis-informed Plaintiff and Class members by notifying them that the Benesowitz decision and Aetna's review applies only to claimants covered under group disability insurance policies "issued or issued for delivery in New York." Notice (Dft's Br., Exh. A, Exh. 1.) Aetna has deliberately not notified Class members of the "deemed delivered" exception provided for by NY Ins. Law § 3201(b)(1), and has therefore drastically mislead the Class by its current Notice.

3

clause did in Shore. Accordingly, Aetna was required to have communicated these two policy provisions to the insureds in the SPD in order for these provisions to be enforceable. Shore, 2007 U.S. Dist. LEXIS 77039 at *24-25.

Remarkably, although Aetna now seeks to rely on these two policy provisions in order to deny Plaintiff and Class members the disability benefits to which they are entitled, Aetna argues that these two provisions need not have been included in the SPD because "they do not pertain to eligibility for benefits." Dft's Br., p. 10 (emph. added).

Plaintiff is flabbergasted at how Aetna can argue that these two policy provisions operate as the basis for denying the eligibility for benefits, and then argue that Aetna was not required to disclose these two policy provisions because "they do not pertain to eligibility for benefits." These two arguments are irreconcilable on their face.

Thus, Aetna's attempt to continue to improperly deny benefits to Plaintiff and other Class members clearly further illustrates why Defendant must not be allowed to continue to communicate with absent Class members without Court supervision while the litigation is pending.[2]

## II.    PLAINTIFF HAS SET FORTH THE APPROPRIATE STANDARD

Plaintiff's Application also sets forth the correct standard for the relief requested. Defendant nevertheless contends that Plaintiff must satisfy the requirements for an injunction. Defendant is incorrect as a matter of law.

---

[2]    Aetna also disputes the applicability of the "deemed delivered" exception provided for by NY Ins. Law § 3201(b)(1). See Dft's Br., p. 9. This statutory provision provides that insurance policies that were actually delivered outside of New York may be "deemed delivered" within New York under certain circumstances. Aetna's argument is clearly premature at this point because discovery is required in order to establish whether the statutory criteria required to be satisfied in order for the "deemed delivered" exception to apply are, as a matter of fact, satisfied.

The cases cited by Plaintiff in his Application stand for the proposition that a court overseeing a class action has the authority to regulate the conduct of the parties pursuant to Fed. R. Civ. P. 23(d) and the inherent authority of the court. The Second Circuit has recognized that a court overseeing a class action owes a fiduciary duty to class members. See In re Warner Comm. Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986). See also In re "Agent Orange", 996 F.2d 1425 at 1438. This is especially true where a defendant is communicating ex parte with absent class members. See, e.g., In re Currency Conversion, 224 F.R.D. 555 at 569.[3] In determining whether to regulate ex parte communications, the courts cited in Plaintiff's Application evaluated the effect of the communications under Fed. R. Civ. P. 23(d) -- not under the standard for issuing an injunction. See, e.g., Jenifer v. Del. Solid Waste Auth., No. 98-270 MMS, 1999 U.S. Dist. Lexis 2542 at *7, 11-12 (D. Del. Feb. 25, 1999) (Where plaintiffs sought "injunctive relief [based] on Rule 23(d) of the Federal Rules of Civil Procedure," court did not apply a preliminary injunction standard).[4]

A.   **Cases Cited by Defendant are Distinguishable**

Defendant's brief, n. 17, and its letter to the Court dated February 13, 2008, cite to Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770 (2d Cir. 1972) for the proposition that "the Second Circuit has made clear that pre-certification communications between opposing counsel and putative class members are

---

[3] See also Hampton Hardware, Inc. v. Cotter & Co., Inc., 156 F.R.D. 630, 632 (N.D. Tex. 1994) ("Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation").

[4] See also Ralph Oldsmobile Inc. v. Gen. Motors Corp., No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 13893 at *4-7 (S.D.N.Y. Sept. 7, 2001).

permissible, even where the communications include settlement negotiations." This is a clear misstatement of the law.

In Weight Watchers, the communications with absent class members were supervised by the court, as discussed in In re Currency Conversion Fee Antitrust Litig.:

> [In Weight Watchers] the defendant's communication with absent class members was supervised by the district court, and the defendant was required to provide advance notice to plaintiff's counsel with an opportunity to comment. 455 F.2d at 772.

224 F.R.D. 555 at 570, n. 9 (emph. added). Plaintiff's Application carefully fashioned the relief requested to conform to that discussed in Weight Watchers.

If Aetna truly intends on communicating with absent Class members in an honest and forthright manner, why would Defendant object to the supervision of such communications? Defendant's continuing staunch objection puts Aetna's true intentions under a glaring spotlight and merits close scrutiny by the Court.

Defendant further seeks to distinguish In re Currency and Hampton Hardware because, according to Defendant, those cases involved defendants "looking to thwart litigation against it," while in this action Aetna merely "undertook to communicate with policy beneficiaries at the direction of the DOI." See Dft's Br., p. 18. While it is true that the DOI did direct disability insurers to communicate with their insured, Aetna was required to seek the Court's permission before undertaking the communications.[5] Aetna's failure to do so further reinforces the fact that Aetna has no interest in, or intention of, communicating with absent Class members in an open and forthright manner. Moreover, the disingenuity of Aetna's claims that it is not seeking to thwart litigation is self-evident.

---

[5]    See Hampton Hardware, 156 F.R.D. at 634 n.3 (Court held that defendant must seek leave to contact absent class members should the SEC require such communications).

6

The defendants in <u>In re Currency</u> sought to limit the remedies available to absent class members by injecting an arbitration agreement into cardholder agreements and thereby prevent them from taking part in the already-filed class action. Similarly, <u>Hampton</u> involved letters sent to absent class members in an attempt to mislead them and coerce them to not participate in a pending class action. Here, Aetna's conduct is strikingly similar because Aetna's communication is (i) is misleading, (ii) seeks to limit the remedies available to absent Class members, (iii) seeks to thwart this litigation by ultimately settling certain of the Class' claims without Court approval, (iv) fails to advise absent Class members of the pendency of this Action that has been brought on their behalf and for their benefit, the claims asserted therein, (v) fails to advise that the Action asserts claims <u>going back to July 2001</u> (and not the <u>two or three year period</u> referred to in Aetna's Notice), and (vi) fails to advise of the statutory "deemed delivery" exception that may be available to Class members here under NY Ins. Law.

Defendant incorrectly argues that Plaintiff does not cite any authority to show that "Aetna should have sought Court approval prior to contacting putative class members through its website." Dft's Br., p. 13. Plaintiff has cited numerous cases holding that misleading or improper communications with absent class members must be supervised by the Court. Plaintiff's Application, p. 5.[6]

### B. The Communications in Question are Misleading and Ripe for Abuse

Plaintiff has amply demonstrated that the Notice is misleading, confusing and patently improper for a number of reasons, including that it can be misconstrued to be an attempt to render legal advice to the Class. Moreover, Defendant asserts that it is

---

[6] Citing, e.g., <u>In re Currency Conversion</u>, 224 F.R.D. at 569; <u>In re School Asbestos Litig.</u>, 842 F.2d 671, 683 (3d Cir. 1988); <u>Ralph Oldsmobile,</u> 2001 U.S. Dist. LEXIS 13893.

continuing to communicate with absent Class members concerning the claims asserted in this Action. Troubling is the fact that these communications likely include discussions concerning the ineligibility of benefits based on provisions not found in SPDs. As discussed above, any such communications will be misleading, at best.

The Notice references the Court of Appeals decision in <u>Benesowitz</u> and the DOI Circular, and alludes to the former's interpretation of the latter, without providing a copy of either, or information concerning the claims alleged in the Complaint. Moreover, the Notice attempts to mislead absent Class members concerning Aetna's obligations under <u>Benesowitz</u>, by stating, "[a]pplicable policy provisions, limitations and exclusions will apply for any re-examined claim to the extent not prohibited by the <u>Benesowitz</u> decision." Dft's Br., Ex. C. Reading the foregoing Notice language, it is impossible for a Class member to know what is or is not "prohibited" by the <u>Benesowitz</u> decision or NY Ins. Law, let alone what Defendant will construe as not prohibited.[7] Thus, Defendant is providing the Class with too little information, out of context, for them to be anything but confused and potentially mislead.

In addition, as stated in the Application, because the Notice fails to inform absent Class members of the fact that Plaintiff's counsel is pursuing claims on their behalf, or the nature of the claims, Class members may unknowingly waive their rights out of fear that Aetna may refuse them benefits if they do not comply with Aetna's conditions for accepting a limited pay-out. See <u>Ralph Oldsmobile</u>, 2001 U.S. Dist. LEXIS 13893 at *12.

---

[7] For example, while it was evident to Plaintiff's counsel that Aetna was continuing to improperly deny benefits on the basis of statute of limitations clauses not communicated to absent Class members -- though absent Class members would be hard pressed to know this without the benefit of legal advice -- Plaintiff did not and could not know that Aetna would assert this "not delivered" in New York exclusion.

8

The very fact that absent Class members are being asked to rely on Defendant for important information concerning their rights regarding claims asserted in the Action renders potential Class members vulnerable to coercion.[8]

Defendant's argument that the Notice here "is simply attempting to notify certain participants that they may be entitled to have their claims denial re-reviewed" is belied by Aetna's own actions. See Dft's Br., p. 16. Indeed, Defendant concedes that it "[i]s currently in the process of contacting such individuals." See Dft's Br. Ex. F ¶6; Dft's Br., p. 17. It is quite evident that Aetna will attempt to improperly settle some subset of the Class' claims, as attested to in the Laughran Affidavit (Dft's Br. Ex. F ¶¶ 6-7).

Moreover, the Notice may very well deceive absent Class members into believing that they have no legal claim to benefits beyond this two or three year period – let alone for the 6 year period alleged in the Complaint.[9]

Therefore, this Court should find that any future ex parte communications, such as those intended here, are ripe for coercion and abuse and should be supervised.

---

[8] See Hampton Hardware, 156 F.R.D. 630 at 633 ("the fact that the members must rely upon the defendant for crucial information as to pricing renders potential class members particularly vulnerable to coercion").

[9] See Ralph Oldsmobile, 2001 U.S. Dist. LEXIS 13893 at *1 (where defendants communication to class members did not mention the action, court held that "There is thus a risk that dealers may sign the release without knowing what they are releasing. Such an unknowing release would be abusive and warrant relief"). Defendant's attempt to distinguish this case fails. In Ralph Oldsmobile, the defendant did not fully apprise the putative class members of the essence of the claims that they were giving up, and the Court subsequently required defendant to send, at their expense, an amended notice to the putative class.

9

### III. PLAINTIFF SATISFIES THE REQUIREMENTS OF AN INJUNCTION

Assuming arguendo that Plaintiff must satisfy the standard for a preliminary injunction before this Court may grant the requested relief, Plaintiff is entitled to the requested relief because this standard is satisfied.

In order to obtain a preliminary injunction against an opposing party, the moving part must show (a) irreparable harm; and, (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. See Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992).

Here, the fact that Class members will be mislead about their rights under Benesowitz, New York law and the claims asserted in this Action cannot be measured in dollars and cents and, accordingly, constitutes "irreparable harm." Indeed, as discussed above, Aetna has already issued one misleading Notice that failed to communicate to absent Class members the pendency of this litigation, failed to notify them about the six year Class Period and provided improper legal advice concerning Benesowitz, and may require releases of claims in return for the payment of benefits  Any future unsupervised actions or communications made by Aetna would pose a real threat to the interests of the absent Class members, including the potential release of claims asserted in the Action.

Finally, as discussed above, this claim has merit and thereby satisfies the second prong of the test. Therefore, if the Court were to apply the standard for issuing a preliminary injunction, Plaintiff has met it.

## CONCLUSION

Accordingly, this Court should grant Plaintiff's Application and enjoin Defendant from unsupervised ex parte communications with absent Class members during the pendency of this action.[10]

Dated: March 4, 2008                                         **Horwitz, Horwitz &**
                                                             **Paradis, Attorneys at Law**


By: /s/ Michael A. Schwartz
    Paul O. Paradis (PP9335)
    Michael A. Schwartz (MS2352)
    Gina M. Tufaro (GT5419)
    Edward Y. Kroub (EK4999)
    28 West 44th St., 16 Floor
    New York, NY 10036
    Tel: (212) 404-2200
    Fax: (212) 404-2226

    Richard J. Quadrino
    Michail Z. Hack
    **Quadrino & Schwartz, P.C.**
    666 Old Country Road –
    Ninth Floor
    Garden City, NY 11530
    Tel: (516) 745-1122
    Fax: (516) 745-0844

    Attorneys for Plaintiff

---

[10] In similar circumstances, courts have awarded various relief in order to protect absent Class members following improper communications. See, e.g., Ralph Oldsmobile Inc., 2001 U.S. Dist. LEXIS 13893 at *15-21 (requiring defendant to issue a notice at its own expense mentioning the pending action, the estimated size of the putative class, the status of the litigation, and that signing a release could preclude an absent class member from the pending action); Jenifer, 1999 U.S. Dist. Lexis 2542 at *24-25 (defendant required to notify absent class members of the pendency of the action and the consequences of signing a release); Haffer v. Temple Univ. of the Commonwealth Sys. of Higher Educ., 115 F.R.D. 506, 512-13 (E.D. Pa. 1987) (Court required defendant to issue a corrective notice at its own expense and further enjoined defendant from future communications).

## **CERTIFICATION**

      I hereby certify that on this date a copy of the foregoing Plaintiff's Reply Brief in Further Support of Application for an Order to Show Cause was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                        /s/ Edward Y. Kroub
                                               Edward Y. Kroub (EK-4999)