**HORWITZ, HORWITZ & PARADIS**
ATTORNEYS AT LAW
28 WEST 44TH STREET, 16TH FLOOR
NEW YORK, NY 10036
TELEPHONE (212) 404-2200
FACSIMILE   (212) 404-2226

CHICAGO OFFICE:
25 E. WASHINGTON STREET
SUITE 900
CHICAGO, IL 60602
TELEPHONE (312) 372-8822
FACSIMILE   (312) 372-1673

**MEMO ENDORSED**

March 17, 2008

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

**VIA HAND DELIVERY**

Hon. Kenneth M. Karas, U.S.D.J.
United States District Court,
Southern District of New York
United States Courthouse
300 Quarropas St., Chambers 533
White Plains, NY 10601-4150

      Re:    Woloshin v. Aetna Life Insurance Company, No. 07-cv-06664-KMK-GAY

Dear Judge Karas:

      Pursuant to this Court's March 7, 2008 Order, Plaintiff Brian Woloshin ("Plaintiff") hereby submits this letter in further support of his request that Aetna Life Insurance Company ("Defendant" or "Aetna") be required to: (i) record telephone calls between Aetna and absent Class members concerning Aetna's ongoing review of previously denied long-term disability insurance claims (the "Benesowitz review"); and (ii) provide Plaintiff with copies of all correspondence with absent Class members concerning the Benesowitz review.

      Counsel for the parties met and conferred throughout the past week and have been unable to come to any arrangement concerning these issues.

I.    TELEPHONE CALL RECORDING

      Aetna has admitted that it currently has the technology and ability to record telephone calls at the Aetna facility that handles telephonic inquiries concerning insurance coverage issues. Despite such capability, however, in response to Plaintiff's request that Aetna tape record all Benesowitz review-related telephone calls with absent Class members, Aetna has stated "it is not practicable for Aetna to tape the conversations with claimants affected by the Benesowitz decision. . . ."[1]

---

[1]

**HORWITZ, HORWITZ & PARADIS**
ATTORNEYS AT LAW

Hon. Kenneth M. Karas, U.S.D.J.
March 17, 2008
Page 2 of 5

In arguing that it is "not practicable" for Aetna to tape these telephone calls, Aetna's primary argument appears to be that Aetna's call center facility, which is located in Maine, does not presently have the technological capability to automatically tape <u>all</u> of the telephone calls coming into the facility. <u>Id.</u> According to Aetna, the procedure for recording a telephone call is a manual procedure requiring the involvement of a supervisor or manager who must listen into the call and then manually activate the recording equipment in order to tape any particular call. <u>Id.</u>

Accepting Defendant's representation, Plaintiff's counsel offered what they believed to be a reasonable and practicable compromise. Plaintiff requested that an Aetna supervisor monitor and tape record a set number of <u>Benesowitz</u> review-related calls per week. For example, since the calls coming into the "800" number are purportedly fielded by a live operator, the operator could simply notify a supervisor when a <u>Benesowitz</u> review-related call is received. The supervisor could then randomly choose which calls to monitor and record, <u>e.g.</u>, every fifth call, or 3 calls per day.[2] Moreover, instead of erasing each tape after a <u>Benesowitz</u> review-related call is completed as Aetna has represented is its current practice, the supervisor could simply utilize a single tape for all <u>Benesowitz</u> review-related calls conducted on each day, then save and produce these tapes to Plaintiff periodically for monitoring. Plaintiff submits that this proposal is practicable, fair, reasonable, and not burdensome or expensive. Further, this proposal eliminates Defendant's purported concern that non-<u>Benesowitz</u> review-related calls might be inadvertently recorded.

Defendant has rejected this compromise, offering baseless excuses.[3] First, Defendant complains of an "unwarranted expense" without quantifying the expense or stating that the expense would be burdensome.[4] <u>See</u> March 14 Letter ("the manual recording process…would impose an unwarranted expense . . . Aetna would have to designate a substantial portion of the time of one supervisor…"). This argument is unsupported, inconsistent and contradicts Aetna's

---

[2] Plaintiff has inquired as to how many <u>Benesowitz</u> review-related calls Aetna is receiving per week in order to determine what would be a reasonable and fair sampling of calls to tape record. Defendant has not responded to this request. In any event, Plaintiff submits that it would not be burdensome to require Aetna to tape 3 calls per day, and provide these tapes to Plaintiff's counsel on a weekly basis.

[3] <u>See</u> J. Rotondo, Esq. March 14, 2008 letter ("March 14 Letter") attached hereto as Ex. B

[4] Indeed, Plaintiff modified his original proposal based on Defendant's representation that it would be too costly to install a new system to tape all calls.

**HORWITZ, HORWITZ & PARADIS**
ATTORNEYS AT LAW

Hon. Kenneth M. Karas, U.S.D.J.
March 17, 2008
Page 3 of 5

assertions found in its March 13 Letter that it monitors the performance of its customer service representatives by way of a supervisor manually recording random calls made to its claim center. A day later, however, Aetna asserts that the taping of a limited number of Benesowitz review-related calls per day would be an "unwarranted expense" requiring a "substantial portion" of a supervisor's time. How much time and expense can be involved with taping a predetermined number of calls per week? Aetna's argument flies in the face of reason. Indeed, by making such inconsistent illogical arguments, Aetna has clearly demonstrated that it has something to hide.

Next, Aetna quite incredibly complains that Plaintiff's proposal would "produce very little of value." See March 14 Letter. Defendant asserts that because "Aetna would obviously have full control over which calls it records, the specialists would be aware when they are being recorded…the selective monitoring would do nothing but open the door for new and different claims against Aetna." Id. Once again, this excuse begs the question asked by the Court during the March 6th hearing:

> So tell me what the big deal is. If you're not going to do the releases and you're going to do this on the up-and-up, which, of course, you're going to represent that you're going to do, then why wouldn't you want the evidence of that?

March 6th Hearing, 24:22-25.

Aetna next offers the excuse that it cannot tape outgoing Benesowitz review-related calls because the specialists fielding these calls "work from home." See March 14 Letter. This representation, however, is squarely contradicted by the excuse offered in the March 13 Letter, that, "The specialists who are reviewing these claims do not make outgoing calls on the 800 line; instead they make outgoing calls on their own lines." Aetna's excuses appear to morph to fit the proposal. Even if this excuse were accepted at face value, it does not excuse the taping of calls coming into the call center.

Finally, Aetna argues that since it must inform callers that Aetna may be taping the calls, and since Aetna is not permitted to mention this Action, Plaintiff's proposal is unworkable. This excuse too must fail. When Aetna initially raised the concern that it would mislead callers by offering a generic warning such as "the call may recorded for training purposes," Plaintiff suggested that callers be informed that "the call may be taped in connection with the Benesowitz review process." See March 14 Letter. Aetna, however, now argues that this language somehow "suggests that the calls are being recorded as part of the regular review process." Id. (emphasis added). If anything is meant to be misleading, it is Defendant's frivolous excuses to keep its conduct out of the Court's review.

## HORWITZ, HORWITZ & PARADIS
ATTORNEYS AT LAW

Hon. Kenneth M. Karas, U.S.D.J.
March 17, 2008
Page 4 of 5

Thus, despite its many excuses, Aetna fails to offer any reasonable argument as to why Plaintiff's proposal is anything but practicable and reasonable in light of Aetna's admission that it currently has the ability and the technology to inexpensively record these calls. Therefore, Plaintiff hereby requests that this Court order Aetna to record a specified number of Benesowitz review-related telephone calls each week in order for the Court and Plaintiff's counsel to ensure that Aetna: (i) will not be seeking releases; (ii) will not be discussing the Action; and (iii) will not in any mislead or coercing absent Class members concerning the Action.

This request does not run afoul of Gulf Oil v. Bernard, 101 S. Ct. 2193 (1981), since it does not limit Aetna's speech in any way and is consistent with the policies of Fed. R. Civ. P. 23. Id.; see also In re Currency Conversion Fee Antitrust Litig., 224 F.R.D. 555, 569 (S.D.N.Y. 2004) (Pauley, J.).

II.     COPIES OF COMMUNICATIONS WITH ABSENT CLASS MEMBERS

While Aetna has agreed that Aetna will give notice to Plaintiff's counsel prior to sending any mass communications to absent Class members, Aetna has refused to provide Plaintiff with copies of correspondence with absent Class members concerning the Benesowitz review. See March 14 Letter. According to Aetna, "Aetna firmly believes that it has no obligation under the law to provide notice of **non-abusive communications**...before a class has been certified." Id. (emphasis added.) Plaintiff wholly disagrees with Defendant's assertion.

As an initial matter, the Court's ability to determine whether Aetna's Benesowitz review-related communications are "non-abusive" is completely non-existent without the necessary mechanism to monitor such communications. Aetna's proposal that the Court cede its responsibility to protect the interests of absent Class members to Aetna is completely unacceptable. See In re "Agent Orange" Product Liability Litigation, 996 F.2d 1425, 1438 (2d Cir. 1993) ("A judge in a class action is obligated to protect the interests of absent class members"). For obvious reasons, Aetna is far too financially interested to make the determination of what constitutes a "non-abusive communication" without the necessary Court supervision. The only way to determine whether Aetna's communications with absent Class member are "non-abusive" is to allow Plaintiff's counsel to review such communications.

The fact that a class has not been certified is not relevant to this discussion. It is beyond dispute that this Court has an obligation to protect absent class members prior to a class being certified. See, e.g., Gulf Oil, 101 S. Ct. 2193 (1981). Moreover, Defendant offers no support for its position that where a defendant is communicating with absent class members concerning the substance of the litigation, plaintiff is not entitled to such communications prior to class certification. It stands to reason that if Defendant is allowed to communicate with absent Class

**HORWITZ, HORWITZ & PARADIS**
ATTORNEYS AT LAW

Hon. Kenneth M. Karas, U.S.D.J.
March 17, 2008
Page 5 of 5

members concerning the substance of the Action, Plaintiff's counsel should, at a minimum, have access to such communications

Indeed, in Gulf Oil, the Supreme Court allowed plaintiff's counsel to contact absent class members before a class was certified because it was in the absent class members' best interests. Here, Plaintiff's request that he be provided with Aetna's communications with absent Class members is in accord with the spirit and intent of the holding in Gulf Oil because the purpose of the review is to protect the interests of absent class members.[5]

Finally, because the parties have executed and submitted a proposed confidentiality order which, inter alia, protects the disclosure of confidential health information (and Plaintiff has repeatedly represented that it is not interested in receiving the confidential health information of absent class members), Defendant cannot object to the production of these communications on such grounds.

Based on the foregoing, Plaintiff hereby requests that this Court grant Plaintiff's requested relief and order Aetna to:

(a)   record a specified number of Benesowitz review-related calls per day and provide these recordings to Plaintiff's Counsel on a weekly basis; and

(b)   provide Plaintiff's counsel with copies of all correspondences with absent Class members concerning the Benesowitz review on a weekly basis.

Respectfully submitted,

Michael A. Schwartz, Esq.

*So ordered–* [handwritten]

cc:   James H. Rotondo, Esq. (via electronic mail)
      Jonathan Borg, Esq. (via electronic mail)

---

[5] In any event, this information is clearly discoverable and the subject of Plaintiff's pending document requests. See Gulf Oil, 101 S. Ct. 2202 (Supreme Court refused to adopt communications ban "that interferes with the formation of a class or the prosecution of a class action").

[handwritten note] 3/19/08 A telephone conf will be held on 3/25/08 @ 2:30 Plaintiff should arrange conf. call with all necessary parties and call Chambers at 914-390-4145

# EXHIBIT A

Case 7:07-cv-06664-KMK-GAY    Document 31    Filed 03/20/2008    Page 6 of 11

# ₱ DAY PITNEY LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

**JAMES H. ROTONDO**
Attorney at Law

242 Trumbull Street
Hartford, CT 06103
T: (860) 275 0197 F: (860) 881 2470
jhrotondo@daypitney.com

March 13, 2008

**VIA EMAIL AND REGULAR MAIL**

Michael A. Schwartz, Esq.
Horwitz, Horwitz & Paradis
28 West 44th Street, 16th Floor
New York, New York 10036

      Re:    Woloshin v. Aetna Life Insurance Company
                No. 07 CV 6664 (KMK) (GAY)

Dear Michael:

      As I indicated on Tuesday, it is not practicable for Aetna to tape the conversations with claimants affected by the *Benesowitz* decision, as set forth in the New York Department of Insurance Circular Letter directive. The individuals who are handling the affected claims are located at Aetna's service center in Maine because that is the office where Aetna has the available staff and where many of the claims were handled originally. Aetna does not have the capability to tape all of the telephone conversations with its existing technology at the Maine facility. The calls coming into the 800 number in response to the Notice on Aetna's website are answered by Customer Service Representatives. In addition, the 800 number is not a dedicated line, so some calls come into that line from claimants who are not responding to the Notice on Aetna's website. When calls come into Aetna on the 800 number, they may be directed either to one of five different Customer Service Representatives or one of the three specialists involved in reviewing the claims. The specialists who are reviewing these claims do not make outgoing calls on the 800 line; instead they make outgoing calls on their own lines. Some of the calls regarding these claims may come in directly on their lines, as opposed to the 800 number. In addition, the Customer Service Representatives and one of the specialists reviewing these claims are not totally dedicated to the review of these claims but do have other functions that they perform.

      Aetna has no reasonable capability to tape telephone conversations in the Maine office. The only recording that is done currently is very limited in scope, performed solely for purposes of training and monitoring service representatives, not for preservation of the conversation. A supervisor or manager can make arrangements to monitor the telephone line of a representative, and, while listening, to record a conversation or part of a conversation. This is a manual procedure. Once the training objective has been accomplished, the tape is manually erased. There is no sophisticated electronic way of capturing all of the calls to or from any one particular

**DAY PITNEY** LLP

Michael A. Schwartz, Esq.
March 13, 2008
Page 2

line, and no storage capacity for those calls. It would be very expensive to install a recording system to capture all of these calls, and take a long period of time to arrange for the installation of such a system, by which time this effort will probably be mostly if not entirely completed.

In addition, as I indicated to you over the telephone, since Aetna does not systematically tape these calls, it would need to give notice to callers of the fact that it was taping. Aetna cannot state that the taping is being done for quality control purposes, because that would not be accurate. If Aetna were to state that it was giving the notice as a result of the lawsuit, that would violate the order of the court that Aetna not discuss this lawsuit. If Aetna gave notice of the fact that the taping was being done without explanation, that would invite questions as to why the taping was occurring, and again put Aetna in the position of having to discuss the lawsuit, which it is prohibited.

Under the circumstances, we expect that you will agree to withdraw your request to have Aetna tape the telephone conversations of all communications with claimants whose claims are being reviewed in response to the directive in the DOI Circular Letter.

Very truly yours,

James H. Rotondo

cc:   Jonathan Borg (via email)

# EXHIBIT B

# ⓓ DAY PITNEY LLP

BOSTON   CONNECTICUT   NEW JERSEY   NEW YORK   WASHINGTON, DC

JAMES H. ROTONDO
Attorney at Law

242 Trumbull Street
Hartford, CT 06103
T: (860) 275 0197 F: (860) 881 2470
jhrotondo@daypitney.com

March 14, 2008

**VIA EMAIL AND REGULAR MAIL**

Michael A. Schwartz, Esq.
Horwitz, Horwitz & Paradis
28 West 44th Street, 16th Floor
New York, New York 10036

    Re:    <u>Woloshin v. Aetna Life Insurance Company</u>
            No. 07 CV 6664 (KMK) (GAY)

Dear Michael:

    We are writing in response to your requests yesterday regarding taping of telephone calls and notice of "mass communications."

**Taping of Telephone Calls**

    In response to my letter of March 13, you proposed that Aetna have a supervisor monitor a certain number of calls a week, tape those calls and preserve the recording. We have made further inquiry of Aetna with respect to this new proposal and determined that Aetna cannot accomplish this given the existing technology in the Maine facility. As indicated in our letter of yesterday, Aetna's ability to record telephone calls in the Maine facility is limited to an ad hoc manual recording process, whereby the supervisor essentially has to sit in on the calls, and then manually tape them. Most, if not all, of the outgoing calls regarding the review of claims pursuant to the directive in the New York Insurance Department Circular Letter ("Circular Letter") are being or will be made by the three specialists mentioned in our letter of March 13. It is not possible for Aetna to arrange for the taping of the outgoing calls of those specialists because they work from their homes, and the taping system does not allow for taping of the telephone lines outside of the facility. In addition, the incoming calls on the 800 number are random. Therefore, monitoring and taping of those incoming calls by a supervisor is virtually impossible because Aetna cannot predict when the calls will come in on the 800 number, and which of those calls relate to the review described in the Circular Letter.

    Even if the manual recording process were practicable, which it is not, it would impose an unwarranted expense and produce very little of value. Aetna would have to designate a substantial portion of the time of at least one supervisor, if not more, who would be charged with

**🅿 DAY PITNEY** LLP

Michael A. Schwartz, Esq.
March 14, 2008
Page 2

the duty of coordinating with the specialists, monitoring, and taping calls. This process also would interfere with the specialists' ability to review the claims in a timely manner.

Moreover, the selective recording of calls, even if it were practicable, would not serve the purpose for which it is proposed, namely, ensuring that the conversations are free of misleading references to the litigation. Aetna would obviously have full control over which calls it records, the specialists would be aware when they are being recorded. Instead of protecting putative class members, therefore, the selective monitoring would do nothing but open the door for new and different claims against Aetna. For instance, should a dispute arise as to a specific conversation and that conversation is one that Aetna did not record, the situation will be ripe for claims that Aetna either purposely failed to record certain conversation or Aetna destroyed the recording.

Finally, we do not believe that the notice given to callers that you suggested -- that the call may be taped in connection with the *Benesowitz* review process -- accomplishes the desired goal. This language is, in fact, inaccurate and misleading because it suggests that the calls are being recorded as part of the regular review process when, in fact, they are being recorded as a result of this litigation. Aetna cannot use the wording you propose without opening itself up to future claims that it purposely concealed the existence of this lawsuit.

We have diligently investigated both your initial and subsequent requests that Aetna tape calls, and determined that both requests are not practical or warranted under the circumstances. Accordingly, we request that you withdraw your request that Aetna tape calls.

### "Mass Communications"

During our conference call yesterday, we also discussed your request that Aetna give notice of any future "mass communications." Aetna agrees that it will give notice to the Court and plaintiff's counsel prior to issuing any future mass communications relating to its review of claims pursuant to the Circular Letter. Aetna's agreement to give prior notice of future mass communications is made in the spirit of compromise and in the hope of avoiding future needless motion practice. As set forth in its February 27, 2008 submission, Aetna firmly believes that it has no obligation under the law to provide notice of non-abusive communications with its own beneficiaries before a class has been certified, especially when those communications are being made in obedience to a directive from the New York Department of Insurance.

Very truly yours,

James H. Rotondo

cc:   Jonathan Borg (via email)