James H. Rotondo (JR-3966)
Andrea E. K. Thomas (AT-8166)
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103-1212
(860) 275-0197
(860) 881-2470 (fax)
jhrotondo@daypitney.com

Attorneys for Defendant,
Aetna Life Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

BRIAN WOLOSHIN, on behalf of himself
and all others similarly situated

                                 Plaintiff,

        v.

AETNA LIFE INSURANCE COMPANY,

                                 Defendant.

----------------------------------------------------------------x

Case No. 07 CV 6664 (KMK)(GAY)

ECF CASE

## DEFENDANT AETNA LIFE INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ..................................................................................... 2

    A. Memec's Group Long-Term Disability Policy ..................................... 2

    B. Woloshin's Long-Term Disability Claim ............................................. 5

    C. The Benesowitz Decision And Aetna's Response ............................... 5

III. ARGUMENT ......................................................................................................... 7

    A. This Court Must Grant Summary Judgment, Because There Are No Facts Supporting The Application Of New York Law ................................... 7

    B. The Application Of New York Law To Woloshin's Claim Violates Federal Choice-of-Law Rules .............................................................. 8

        1. Federal Choice-of-Law Rules Apply In ERISA Cases ............... 8

        2. Florida Law Governs The Policy According To An Effective Choice- of-Law Provision Contained In The Policy ................... 9

        3. California Law Would Govern The Policy In The Absence Of An Effective Choice Of Law By The Parties ................................ 13

        4. New York Law Does Not Govern The Policy ......................... 14

    C. By Their Own Terms, New York Insurance Law §§ 3234(a)(2) And 3201 Are Inapplicable To The Policy ....................................................... 16

    D. The Application Of A Single State's Laws To Group Insurance Policies Furthers ERISA's Purposes .............................................................. 22

IV. CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

Page

Actna Life Ins. Co. v. Borges, 869 F.2d 142 (2d Cir. 1989) ..........................................22

Allen v. Cuomo, 100 F.3d 253 (2d Cir. 1996)...................................................................7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)......................................................8

Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161 (3d Cir. 1999)....................11, 12

Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367 (S.D.N.Y. 2006)........9

Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523 (2d Cir. 1985) ....................20

Benesowitz v. Metro. Life Ins. Co., 386 F. Supp. 2d 132 (E.D.N.Y. 2005)...............6, 21

Benesowitz v. Metro. Life Ins. Co., 471 F.3d 348 (2d Cir. 2006)....................................6

Benesowitz v. Metropolitan Life Ins. Co., 8 N.Y.3d 661 (2007) ...............1, 5, 6, 16, 21

Boseman v. Conn. Gen. Life Ins. Co., 301 U.S. 196 (1937) ..........................................12

Buell v. Sec. Gen. Life Ins. Co., 987 F.2d 1467 (10th Cir. 1993) ..................................18

Cannon v. Perry, 144 Idaho 728 (2007)..........................................................................17

Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786 (2d Cir. 1980) ..........8

Croskey v. Ford Motor Company-UAW, No. 01 Civ. 1094 (MBM), 2002 U.S. Dist.
LEXIS 8824 (S.D.N.Y. May 2, 2002) .......................................................................... 8-9

DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918
(6th Cir. 2006)..............................................................................8, 9, 10, 14, 23

De Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293 (2d Cir. 2002) ........................17

Egelhoff v. Egelhoff, 532 U.S. 141 (2001)..............................................................22, 23

Eli Lilly do Brasil, Ltda v. Fed. Express Corp., 502 F.3d 78 (2d Cir. 2007)...................9

Fath v. UNUM Life Ins. Co. of Am., 928 F. Supp. 1147 (M.D. Fla. 1996), aff'd 119
F.3d 10 (11th Cir. 1997) ..................................................................................................11

Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987) ..................................................22

Hamilton v. Standard Ins. Co., 516 F.3d 1069 (8th Cir. 2008)........................................18

Henning v. Metro. Life Ins. Co., 546 F. Supp. 442 (M.D. Pa. 1982) ..............................15

Home for Crippled Children v. Prudential Ins. Co. of Am., 590 F. Supp. 1490
(W.D. Pa. 1984) ...............................................................................................................15

In re Koreag, Controle et Revision S.A., 961 F.2d 341 (2d Cir. 1992) .......................8, 9

Louis v. Genworth Life & Health Ins. Co., No. 07-11839-GAO, 2008 U.S. Dist.
LEXIS 75330 (D. Mass. Sept. 30, 2008) .......................................................................16

Mayoff v. Hartford Life & Accident Ins. Co., No. 90 C 0571, 1990 U.S. Dist.
LEXIS 12467 (N.D. Ill. Sept. 20, 1990) .......................................................................18

Metro. Life Ins. Co. v. Mass., 471 U.S. 724 (1985) ......................................................23

Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691 (S.D. Fla. 2007)..............................17

N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
514 U.S. 645 (1995)........................................................................................................22

Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,
322 F.3d 147 (2d Cir. 2003)............................................................................................20

Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100 (2d Cir. 2001) .................................7

Paul Revere Life Ins. Co. v. Damus, Ecker, Rosenthal & Marshall, M.D., 864 So. 2d 442
(Fla. Dist. Ct. App. 2003) ...............................................................................................11

Preserver Ins. Co. v. Ryba, 10 N.Y.3d 635, 642 (2008) ................................................18

Prudential Ins. Co. of Am. v. Snicker, No. 66 Civ. 255, 1966 U.S. Dist. LEXIS 6686
(S.D.N.Y. Sept. 28, 1966)...............................................................................................15

Pulvers v. First UNUM Life Ins. Co, 210 F.3d 89 (2d Cir. 2000)..............................6, 22

Reilly v. Standard Ins. Co., No. C 03-05423, 2004 U.S. Dist. LEXIS 18313
(N.D. Cal. Sept. 8, 2004) ................................................................................................11

Rosner v. Metro. Prop. & Liab., Ins. Co., 236 F.3d 96 (2d Cir. 2000)...........................17

Sharkey v. Mut. of Omaha Ins. Co., No. 1:05-CV-129, 2007 U.S. Dist.
LEXIS 56368 (D. Vt. Aug. 1, 2007).............................................................................9-10

Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228 (S.D.N.Y. 2005) .......................12

Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481 (7th Cir. 1997) .................20

Sprecht v. Netscape Commc'ns. Corp., 150 F. Supp. 2d 585 (S.D.N.Y. 2001) aff'd, 306 F.3d 17 (2d Cir. 2002)........................................................................................................9

State St. Bank & Trust Co. v. Salovaara, 326 F.3d 130 (2d Cir. 2003)........................21

TIE Commc'ns, Inc. v. Kopp, 218 Conn. 281 (1991) ...................................................17

Tocker v. Phillip Morris Cos., Inc., 470 F.3d 481, 488 (2006) ...................................12

Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995)..................................................7

Wang Labs., Inc. v. Kagan, 990 F.2d 1126 (9th Cir. 1993)..........................................22

Wells Fargo Asia, Ltd. v. Citibank, N.A., 936 F.2d 723 (2d Cir. 1991) ....................8, 9

Wilkerson v. Riffage.com Disability Income Prot. Program, No. C-03-04926, 2006 U.S. Dist. LEXIS 54542 (N.D. Cal. July 24, 2006)........................................................11

Zogg v. Penn Mutual Life Ins. Co., 276 F.2d 861 (2d Cir. 1960) ...............................18

## STATUTES

29 U.S.C. § 1144(b)(2) ..................................................................................................23

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. .........................................................................................................1, 22, 23, 24

N.Y. Ins. Law. § 3201(b) .............................................................................19, 20, 21, 22

N.Y. Ins. Law. § 3201 ...................................................................................................21

N.Y. Ins. Law. § 3203 ...................................................................................................19

N.Y. Ins. Law. § 3203(e) ..............................................................................................19

N.Y. Ins. Law § 3234 ..............................................................1, 2, 16, 21, 22, 24

N.Y. Ins. Law § 3234(a) ...............................................................................................18

N.Y. Ins. Law § 3234(a)(2) .........................................................1, 5-7, 16, 20, 21, 22

N.Y. Ins. Law § 3420(d) ...............................................................................................18

N.Y. Ins. Law § 4235(a)(2) ..........................................................................................19

N.Y. Ins. Law § 4235(c)(1)......................................................................................19, 20

Fed. R. Civ. P. 56.1(a) ........................................................................25

Fed. R. Civ. P. 56(c) ...........................................................................2

## MISCELLANEOUS

Restatement (Second) of Conflict of Laws § 187 ........................................10

Restatement (Second) of Conflict of Laws § 187, cmt. f...............................10

Restatement (Second) of Conflict of Laws § 187(2) ....................................10

Restatement (Second) of Conflict of Laws § 188 ........................................13

Restatement (Second) of Conflict of Laws § 188(1) ....................................13

Restatement (Second) of Conflict of Laws § 188(2) ....................................13

Restatement (Second) of Conflict of Laws § 192, cmt.h .........................11, 14

Restatement (Second) of Conflict of Laws § 192, cmt. l ...............................14

Restatement (Second) of Contracts § 218, cmt. B .......................................17

                                                                            **Tab**

Plaintiff's Second Amended Complaint .......................................................... A

Excerpts from the June 24, 2008 Deposition of Brian Woloshin ......................... B

Plaintiff's Supplemental Responses and Objections to Defendant's First Set of Requests
for Admission of June 27, 2008.......................................................................... C

Affidavit of Kimberly Shephard .................................................................... D

     i.   The Group Policy

     ii.  The Booklet Certificate

     iii. The Summary of Coverage

Affidavit of Mark Otis .................................................................................. E

Excerpts from the September 18, 2008 Deposition of Arne Bjarno ................... F

Excerpts from the September 26, 2008 Deposition of Brian Hurley................... G

Affidavit of Jane E. Smith ............................................................................ H

     i.   Summary of Coverage

     ii.  Booklet Certificate

     iii. Rider 17 to Booklet Certificate

     iv. Rider 18 to Booklet Certificate

     v.  Employer Application Dated May 4, 2004

     vi. Employer Application Dated June 7, 2004

Certified Copies of Filings with the Delaware Secretary of State ....................... I

Affidavit of Brian J. Hurley.......................................................................... J

     i.   Marsh & McLennan Solicitation

     ii.  Aetna's Proposal Dated February 25, 2004

     iii. May 24, 2004 email by Sherri Harrison

iv. May 10, 2004 email by Jenifer Gutschmidt

v. Installation Checklist Dated April 22, 2004

vi. Memcc Census Dated January 14, 2004

Affidavit of Lisa A. Mason ................................................................................. K

    i. Marsh & McLennan Solicitation

September 19, 2008 Deposition of Kelly France ................................................. L

    i. AUSHC Law Department Proactive Program Reminder for Selection of Contract State for Non-HMO Group Insurance Policies

Affidavit of Deborah F. Laughran ...................................................................... M

    i. December 14, 2007 New York Department of Insurance Circular Letter

Unpublished Court Opinions ............................................................................... N

    i. Croskey v. Ford Motor Co.-UAW, No. 01 Civ. 1094 (MBM), 2002 U.S. Dist. LEXIS 8824 (S.D.N.Y. May 2, 2002).

    ii. Louis v. Genworth Life and Health Insurance Co., No. 07-11839-GAO, 2008 U.S. Dist. LEXIS 75330 (D. Mass. Sept. 30, 2008).

    iii. Mayoff v. Hartford Life and Accident Insurance Co., No. 90 C 0571, 1990 U.S. Dist. LEXIS 12467 (N.D. Ill. Sept. 21, 1990).

    iv. Prudential Insurance Co. of Am. v. Snicker, No. 66 Civ. 255, 1966 U.S. Dist. LEXIS 6686 (S.D.N.Y. Sept. 28, 1966).

    v. Reilly v. Standard Insurance Co., No. C 03-05423, 2004 U.S. Dist. LEXIS 18313 (N.D. Cal. Sept. 8, 2004).

    vi. Wilkerson v. Riffage.com Disability Income Protection Program, No. C-03-04926, 2006 U.S. Dist. LEXIS 54542 (N.D. Cal. July 24, 2006).

N.Y. Ins. Dept., Opinions of General Counsel, No. 03-10-23, Oct. 29, 2003 ..................... O

N.Y. Ins. Dept., Opinions of General Counsel, No. 04-10-15, Oct. 14, 2004 ..................... P

N.Y. Ins. Dept., Opinions of General Counsel, No. 06-12-18, Dec. 22, 2006 ................... Q

Certified Copies of Pleadings in Benesowitz v. Metropolitan Life, Case No. 2:04-CV-00805, Eastern District of New York, Docket Entries # 32, 33, 28, 36 ............................... R

i. Defendants' Notice of Motion for Summary Judgment

ii. Memorandum of Law Supporting Defendants' Motion for Summary Judgment

iii. Plaintiff Mitchell Benesowitz's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment

iv. Defendant's Reply Memorandum of Law Supporting Their Motion for Summary Judgment

.

## I.  INTRODUCTION

The plaintiff Brian Woloshin ("Woloshin") asserts that Aetna Life Insurance Company ("Aetna") has breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The only "wrong," however, that Woloshin alleges in his Second Amended Complaint is the inclusion and enforcement of a pre-existing condition provision in the group long-term disability policy (the "Policy") that supposedly violates New York Insurance Law § 3234(a)(2), as interpreted recently by the New York Court of Appeals in Benesowitz v. Metropolitan Life Insurance Co., 8 N.Y.3d 661 (2007). (See Ex. A, Second Am. Compl. ¶¶ 47, 48.[1]) Accordingly, Woloshin's claim is fundamentally flawed, because New York law does not apply to his claim and therefore he is not entitled to the protections of § 3234.

This case arises from Aetna's denial of Woloshin's claim for long-term disability benefits under the Policy issued by Aetna to Woloshin's former employer, Memec, LLC ("Memec"). That denial was made in accordance with a pre-existing condition provision contained in the Policy. In this lawsuit, Woloshin does not seek this Court's review of whether his condition was in fact pre-existing or whether he is disabled under the terms of the policy. (See Ex. A, Second Am. Compl., Prayers for Relief (c) and (d); Ex. B, Woloshin Dep. at 103.[2]) Rather, Woloshin challenges Aetna's reliance on that pre-existing condition provision.

---

[1] Woloshin brings this case as a purported class action on behalf of allegedly "thousands" of long-term disability claimants whose claims to Aetna supposedly were denied prior to Benesowitz. The primary relief for the class that he seeks is a court order that Aetna re-adjudicate class members' claims in compliance with Benesowitz. Aetna has already done exactly that with respect to claims governed by New York law. See Section II., C., below.

[2] In his Supplemental Responses and Objections to Defendant's First Set of Requests for Admission of June 27, 2008, Woloshin confirmed that he is not seeking to have the Court make a determination as to whether he is disabled under the terms of the Policy. (See Ex. C, Supp. Resp. and Obj. to Def.'s First Set of Req. for Admission, No. 6.)

Woloshin can point to no relevant facts supporting the application of New York law to his claim. The Policy itself indicates that it was delivered in Florida, and is to be construed in line with the laws of that jurisdiction. Neither the negotiation, nor the performance of the Policy took place in New York. Neither of the parties to the contract has its principal place of business in New York, and approximately 98% of Memec's employees were residents of states other than New York. The only connection that the Policy has with the State of New York for purposes of this motion is that Woloshin happens to be a resident of the State, worked there and was covered under the Policy. Moreover, by its own terms, New York Insurance Law § 3234 does not apply to the Policy because it is a group disability policy that was not "issued" or "issued for delivery" in New York.

Accordingly, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Aetna submits that this Court should grant its motion for summary judgment for the following reasons:

- The application of <u>New York law</u> to Woloshin's claim is inconsistent with applicable choice-of-law rules.

- The application of New York law to Woloshin's claim would be contrary to the New York statutes that Woloshin seeks to invoke.

- The application of New York law to Woloshin's claim would be inconsistent with the policies of uniformity and efficiency underlying ERISA.

## II. STATEMENT OF FACTS

### A. Memec's Group Long-Term Disability Policy

The Memec Policy, which had an effective date of July 1, 2004, (Ex. D, Shephard Aff. ¶ 4, Ex. 1 at Face Page; Ex. A, Second Am. Compl. ¶ 8), was prepared by Kimberly Shephard, a benefits consultant in Aetna's Fresno, California office, and indicates that it was signed at

"Aetna's Home Office in Hartford, Connecticut." (Ex. D, Shephard Aff. ¶¶ 3, 4, Ex. 1 at Face Page.) The Policy consists of the Group Accident and Health Insurance Policy, the Booklet Certificate, and the Summary of Coverage. (Id., Shephard Aff. ¶ 10, Ex. 1 at 9010.) Aetna issued the Policy directly to Memec, as an employer, for the benefit of its employees. (Ex. E, Otis Aff. ¶¶ 2, 8; Ex. A, Second Am. Compl. ¶ 8.) Although Aetna's underwriting department assumed that the disability insurance plan described therein would be administered in Florida (Ex. F, Bjarno Dep. at 48-50), the summary of coverage included in the Policy indicates that it was actually administered through Memec's California office. (Ex. G, Hurley Dep. at 46-49; Ex. D, Shephard Aff., Ex. 3.)

Aetna is a Connecticut corporation with its principal place of business in Hartford, Connecticut. (Ex. E, Otis Aff. ¶ 4; Ex. A, Second Am. Compl. ¶ 18.) It is licensed to sell life, health and disability insurance in all fifty states, and has sales and claims center offices at various locations throughout the United States. (Ex. E, Otis Aff. ¶ 5.) At the time that the Policy was issued, Memec was a Delaware corporation, with its principal place of business in San Diego. (Ex. H, Smith Aff. ¶ 4; Ex. I, Certified Copies of Filings with the Delaware Secretary of State; Ex. B., Woloshin Dep. at 47-48.) According to a January 14, 2004 census of Memec employees provided to Aetna, Memec had 776 employees resident in 33 different states – 352 of whom resided in California, 23 of whom resided in Florida, and 17 of whom, including Mr. Woloshin, resided in New York. (Ex. J, Hurley Aff. ¶ 15, Ex. 6; Ex. H, Smith Aff. ¶ 4; Ex. A, Second Am. Compl. ¶ 7.)

Before the issuance of the Policy, Memec's insurance broker, Marsh & McLennan ("Marsh"), had solicited a proposal for group insurance coverage from Aetna, (Ex. J. Hurley Aff. ¶ 5, Ex. 1; Ex. K. Mason Aff. ¶ 5, Ex. 1), and Aetna employees in its Santa Ana and San Diego,

California offices responded to that request. (Ex. J. Hurley Aff. ¶¶ 4, 6, 10; Ex. K Mason Aff. ¶¶ 4, 7.) Memec completed two Employer Applications to receive group long-term disability coverage from Aetna. The first indicates that it was drafted for execution in California, was signed by Aurea McLeod, Memec's Benefits Manager, and is dated May 4, 2004. (Ex. H, Smith Aff. ¶¶ 5, 6, Ex. 5.) The second indicates that it was drafted for execution in Florida, was signed by Diana Wansley, Memec's Payroll Manager, and is dated June 7, 2004. (Id., Smith Aff. ¶ 6, Ex. 6.) The January 14, 2004 census of Memec employees indicates that Memec's Benefits Manager (Ms. McLeod) and Payroll Manager (Ms. Wansley) were both based in California. (Ex. J, Hurley Aff. ¶ 15, Ex. 6.)

Aetna and Marsh personnel based in California entered into negotiations regarding Aetna's proposal. (Ex. J, Hurley Aff. ¶¶ 4, 6, 10; Ex. K, Mason Aff. ¶¶ 4, 6, 7, 10.) Pursuant to Aetna's initial proposal, California was to be the contract state, consistent with Aetna's general practice of issuing a policy for delivery in the state in which the customer's headquarters and largest percentage of employees are located. (Ex. J, Hurley Aff. ¶ 7, Ex. 2.) Memec, however, requested that Aetna provide a long-term disability conversion benefit that Aetna was not able to offer in California at that time. (Ex. J, Hurley Aff. ¶¶ 8-9; Ex. K, Mason Aff. ¶¶ 8-9.) Aetna believed that it would be able to offer the conversion benefit in Florida. (See Ex. F, Bjarno Dep. at 48-50, 101-03). At that time, Aetna's law department had published internal guidelines for choosing an alternate contract state.[3] Exceptions to these guidelines could be approved by Aetna's compliance department, and after the compliance department granted such an exception (id., Bjarno Dep. at 92-97), the parties ultimately agreed that the Policy would be issued for

---

[3] (See Ex. L, France Dep. at 19-21, Ex 1, AUSHC Law Department Proactive Program Reminder for Selection of Contract State for Non-HMO Group Insurance Policies.)

delivery in Florida. (Ex. K, Mason Aff. ¶ 9; Ex. D, Shephard Aff. ¶ 4, Ex. 1 at Face Page.)

Further evidencing the parties' intent that the Policy be issued for delivery in Florida and governed by that state's laws, Florida specific provisions were incorporated into the Group Policy and Booklet Certificate. (Ex. D, Shephard Aff. ¶¶ 6-8, Exs. 1-2.) Moreover, the parties included a choice-of-law provision in the Group Policy indicating that the Policy is to be construed in line with the law of the jurisdiction of delivery, which the Policy expressly states to be Florida. (Ex. D, Shepard Aff. ¶ 7, Ex. 1 at Face Page.)

### B.     Woloshin's Long-Term Disability Claim

On March 18, 2005, Woloshin submitted a claim for long-term disability benefits under the Policy. (Ex. A., Second Am. Compl. ¶¶ 14-15.) Aetna denied Woloshin's claim pursuant to the pre-existing condition provision in the Policy. (Id. ¶ 16.) That provision states as follows:

> No benefit is payable for any disability that is caused by or contributed to by a "pre-existing condition" and starts before the end of the first 12 months following your effective date of coverage.
>
> A disease or injury is a pre-existing condition if, during the 3 months before your effective date of coverage:
>
> - it was diagnosed or treated;
> - or services were received for diagnosis or treatment of the disease or injury; or
> - you took drugs or medicines prescribed or recommended by a physician for that condition.

(Ex. D, Shephard Aff., ¶¶ 8, 10, Ex. 2 at 9.)

### C.     The Benesowitz Decision And Aetna's Response

Before the New York Court of Appeals decision in Benesowitz, pre-existing condition provisions were thought to comply with New York Insurance Law § 3234(a)(2), which provides that "[n]o pre-existing condition provision shall exclude coverage for a period in excess of

twelve months following the effective date of coverage for the covered person." The language of § 3234(a)(2) is ambiguous. The statute could be interpreted as either permitting insurers to exclude coverage for disabilities that arise during the first 12 months of coverage and stem from pre-existing conditions, or creating a 12 month waiting period for the receipt of benefits for such disabilities. Pulvers v. First UNUM Life Ins. Co, 210 F.3d 89, 96 (2d Cir. 2000).

In Benesowitz, the plaintiff, who had been denied long-term disability benefits pursuant to a pre-existing condition provision, brought an ERISA claim in federal court. See Benesowitz v. Metro. Life Ins. Co., 386 F. Supp. 2d 132, 134-35 (E.D.N.Y. 2005). On appeal from the grant of summary judgment in favor of the defendant insurer, the Second Circuit certified the question of how to interpret § 3234(a)(2) to the New York Court of Appeals. See Benesowitz v. Metro. Life Ins. Co., 471 F.3d 348, 352-53 (2d Cir. 2006). The Court of Appeals held that § 3234(a)(2) "allows insurers to toll benefits during the first 12 months of coverage, but does not permit them to impose an absolute bar to coverage for disabilities stemming from pre-existing conditions." Benesowitz, 8 N.Y.3d at 664.

On December 14, 2007, the New York Department of Insurance (the "DOI") issued Circular Letter No. 14 (the "Circular Letter") directing insurers as to how to respond to the Court of Appeals decision in Benesowitz. (See Ex. M, Laughran Aff., ¶ 4, Ex. 1.) In accordance with this directive, Aetna reviewed claims previously filed by individuals seeking disability benefits under group disability insurance policies (including, but not limited to, ERISA long-term disability policies) issued or issued for delivery in New York going back two years from June 27, 2007 (or three years if so required by the contractual limitations period in the applicable policy)

(the "NY pre-ex project"). (Id., Laughran Aff. ¶ 5.)[4]  On the advice of his counsel, Woloshin

did not seek to have his claim re-reviewed.  (Ex. B., Woloshin Dep. at 138-40; Ex. M, Laughran

Aff. ¶ 12.)

## III.    ARGUMENT

### A.    This Court Must Grant Summary Judgment, Because There Are No Facts Supporting The Application Of New York Law.

To prevail, Woloshin must establish that New York law, and specifically § 3234(a)(2),

applies, but there are no facts that support the application of New York law.  Accordingly, this

Court must grant judgment in favor of Aetna.  See Parker v. Sony Pictures Entm't, Inc., 260 F.3d

100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary

judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of

proof on plaintiff's part and, at that point, plaintiff must designate specific facts showing that

there is a genuine issue for trial.") (internal citation and quotation marks omitted); Vann v. City

of New York, 72 F.3d 1040, 1048 (2d Cir. 1995) ("In moving for summary judgment against a

party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by

pointing to an absence of evidence to support an essential element of the nonmoving party's

claim."); Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) ("A defendant moving for summary

---

[4] Aetna initially identified 57 individual's claims for review.  An additional individual's claim was discovered late in the process.  Of those 58 individuals, two were later determined to have made claims under policies issued or issued for delivery in states other than New York, and one was determined to have stipulated to the dismissal with prejudice of litigation arising from his claim prior to the commencement of the NY pre-ex project.  (Ex. M, Laughran Aff. ¶ 7.)  Of the remaining 55 individuals, 36 ultimately received benefits, and the claims of 19 were denied for a variety of reasons, including that the claimant was disabled prior to the effective date of the policy, the claimant was not working the necessary number of hours to be eligible for coverage, the claimant either recovered or showed no evidence of disability prior to the end of the 12 month waiting period established by Benesowitz, the claimant did not respond to letters and telephone calls, and the claimant could not be located.  (Id. ¶¶ 8, 9, 10.)

judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."). This Court must grant summary judgment where, as here, the evidence demonstrates that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

**B.      The Application Of New York Law To Woloshin's Claim Violates Federal Choice-of-Law Rules.**

Under federal choice-of-law rules applicable in ERISA cases, Woloshin cannot establish that New York law applies to his claim because (1) Florida law governs the Policy according to an effective choice-of-law provision, (2) California law would govern the Policy in the absence of an effective choice-of-law provision, and (3) New York lacks sufficient contacts with the parties and the transaction to warrant application of its law to the Policy.

**1.      Federal Choice-of-Law Rules Apply In ERISA Cases.**

The Second Circuit has repeatedly stated that "[i]n federal question cases, we are directed to apply a federal common law choice-of-law rule to determine which jurisdiction's substantive law should apply." Wells Fargo Asia, Ltd. v. Citibank, N.A., 936 F.2d 723, 726 (2d Cir. 1991); see In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir. 1992); Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 795 (2d Cir. 1980). Courts, therefore, apply federal choice-of-law rules in ERISA cases. See DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 922 (6th Cir. 2006) ("In determining which state's law applies in an ERISA case, this court's analysis is governed by the choice of law principles derived from federal common law.") (internal quotation marks omitted); Croskey v. Ford Motor Company-UAW, No. 01 Civ. 1094 (MBM), 2002 U.S. Dist. LEXIS 8824, at *15

-8-

(S.D.N.Y. May 2, 2002) ("Jurisdiction in this case is predicated on a federal question because the underlying claim is based on ERISA, and therefore federal common law determines the choice-of-law rule to be applied.").[5] In the absence of any established body of federal choice-of-law rules, courts rely upon the Restatement (Second) of Conflicts of Laws ("Restatement"). See Eli Lilly do Brasil, Ltda v. Fed. Express Corp., 502 F.3d 78, 81 (2d Cir. 2007) ("As our prior cases indicate, when conducting a federal common law choice-of-law analysis, absent guidance from Congress, we may consult the Restatement (Second) of Conflict of Laws.") (citing Durden, 448 F.3d at 923).[6]

**2.     Florida Law Governs The Policy According To An Effective Choice-of-Law Provision Contained In The Policy.**

Aetna and Memec expressly agreed that Florida law would govern the Policy.[7] This choice-of-law provision is fully enforceable under the provisions of the Restatement.

------

[5] Copies of all unpublished opinions are contained within Exhibit N in alphabetical order.

[6] Although it is appropriate to apply federal choice-of-law rules in an ERISA case, an application of New York's choice-of-law rules would result in the same outcome. See In re Koreag, 961 F.2d at 350 (discerning "no significant difference between the applicable federal and New York choice-of-law rules"); Wells Fargo, 936 F.2d at 726 (noting that the federal and New York choice-of-law rules "invoke[] similar considerations.") (internal citations and quotation marks omitted); Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006) (stating that New York courts "follow the test set forth in the Restatement (Second) of Conflicts of Laws," and accordingly, "refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute"); Specht v. Netscape Commc'ns. Corp., 150 F. Supp. 2d 585, 591 (S.D.N.Y. 2001) (stating that the federal choice-of-law rules "mirror[] the New York 'center of gravity' test, which also focuses on which state has the strongest connection to the litigation"), aff'd, 306 F.3d 17 (2d Cir. 2002).

[7] Woloshin may argue that the court should not enforce the choice-of-law provision contained in the Policy due to lack of evidence as to physical delivery. The provisions contained in a policy, however, are valid and enforceable irrespective of physical delivery. Sharkey v.

-9-

Restatement (Second) of Conflict of Laws § 187, which governs the parties' choice-of-law, provides in pertinent part:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law to the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2). Neither exception to the parties' choice of law applies in this case. The Restatement observes that the first exception will almost never apply because parties rarely choose a law to govern their contracts without good reason. See Durden, 448 F.3d at 924, n.2; Restatement § 187, cmt. f.[8] Here, the parties chose Florida law because they wanted to include a conversion benefit that Aetna was unable to offer in California. Therefore, they had a reasonable basis for selecting Florida law to govern the Policy.

The second exception does not apply because Florida law is not contrary to a fundamental policy of the state whose law would apply in the absence of an effective choice of

---

Mut. of Omaha Ins. Co., No. 1:05-CV-129, 2007 U.S. Dist. LEXIS 56368, at *8 (D. Vt. Aug. 1, 2007).

[8] The comments to the Restatement illustrate the infrequency with which the exception in § 187(2)(a) should be applied. For example, the comments point out that "[t]he forum will not . . . apply a foreign law which has been chosen by the parties in the spirit of adventure or to provide mental exercise for the judge. Situations of this sort do not arise in practice." Restatement (Second) of Conflict of Laws, § 187, cmt. f. The Restatement recognizes that "[t]he parties to a multistate contract may have a reasonable basis for choosing a state with which the contract has no substantial relationship." Id.

law by the parties. California law would govern the Policy in the absence of an effective choice

of law by the parties. See, infra, Part III.B.3. Florida law regarding the enforceability of pre-

existing condition exclusions in group disability insurance contracts is not contrary to a

fundamental policy of California because both states recognize the validity of such provisions.[9]

Accordingly, the parties' choice-of-law provision should be enforced.[10]

Courts generally uphold choice-of-law provisions in group insurance policies because the

inclusion of such provisions in the group-insurance-policy context does not present the same

concerns as the inclusion of such provisions in adhesion contracts. See Assicurazioni Generali,

S.P.A. v. Clover, 195 F.3d 161, 165 (3d Cir. 1999) ("[A] choice of law made by the insurer is

less suspect in the group insurance context as the greater bargaining leverage possessed by the

group agent should protect the insureds from unfavorable law."); Restatement (Second) of

Conflict of Laws § 192, cmt. h. ("Choice-of-law provisions contained in group life insurance

policies are more likely to be given effect . . . because the organization or individual which

---

[9] No Florida or California statute places restrictions on the scope of pre-existing condition provisions in group disability policies. In fact, several courts in both states have upheld pre-existing condition exclusions in disability insurance policies. See, e.g., Reilly v. Standard Ins. Co., No. C 03-05423, 2004 U.S. Dist. LEXIS 18313 (N.D. Cal. Sept. 8, 2004) (entering judgment in favor of defendant insurance company on plaintiff's ERISA claim because the plaintiff had a pre-existing condition); Wilkerson v. Riffage.com Disability Income Prot. Program, No. C-03-04926, 2006 U.S. Dist. LEXIS 54542 (N.D. Cal. July 24, 2006) (upholding denial of plaintiff's claim for long-term disability benefits because plaintiff's multiple sclerosis was a pre-existing condition); Fath v. UNUM Life Ins. Co. of Am., 928 F. Supp. 1147 (M.D. Fla. 1996) (upholding denial of benefits under a group disability insurance policy issued to the insured's employer based on pre-existing condition), aff'd 119 F.3d 10 (11th Cir. 1997); Paul Revere Life Ins. Co. v. Damus, Ecker, Rosenthal & Marshall, M.D., 864 So.2d 442 (Fla. Dist. Ct. App. 2003) (upholding denial of claims for disability benefits because the claimant's illness manifested itself before the policy was issued).

[10] There is no need to reach the question of whether California has a materially greater interest in the issue raised by this case than Florida because the application of Florida law regarding pre-existing condition clauses is not contrary to any fundamental policy of California.

procures the master policy will usually have a stronger bargaining position than an individual

insured with the result that the choice-of-law provision is less likely to have a 'take-it-or-leave-it'

character."). Both Aetna and Memec (acting through its agent, Marsh) were sophisticated parties

that clearly intended for Florida law to govern their agreement, and their motivation in choosing

Florida law was to provide an ***additional*** benefit to the Memec employees, ***not*** to subject them to

"unfavorable law." Respecting the parties' choice of law also serves to promote uniformity and

predictability in the application of the Policy. See Boseman v. Conn. Gen. Life Ins. Co., 301

U.S. 196, 206 (1937) ("The conclusion that Pennsylvania law governs the policy . . . is

supported . . . by the purpose of the parties to the contract that everywhere it shall have the same

meaning and give the same protection and that inequalities and confusion liable to result from

applications of diverse state laws shall be avoided."); Clover, 195 F.3d at 165 ("When, as in this

case, a business entity . . . obtains a group insurance contract that applies to individuals in

various states, both the insurer and the organization have an arguable interest in establishing

uniform procedures by specifying a particular state's law to apply to future disputes.") For these

additional reasons, the Court should give effect to the parties' choice-of-law provision.[11]

---

[11] Any claim by Woloshin that the choice-of-law provision in the Policy does not apply to him because it was not articulated in his Summary Plan Description ("SPD") must fail. First, choice-of-law provisions are not mandated inclusions in SPDs under ERISA. See Tocker v. Phillip Morris Cos., Inc., 470 F.3d 481, 488 (2006) ("[W]e do not expect that SPDs will 'anticipate every possible idiosyncratic contingency that might affect a particular participant's eligibility for benefits.'"). Second, Woloshin cannot establish that he suffered any prejudice as a result of alleged deficiencies in the SPD. See Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228, 262 (S.D.N.Y. 2005) ("[L]ikely prejudice to a plaintiff will be presumed if, as the result of an SPD deficiency, he was not aware of the need to take an action within his control (submitting an affidavit, filing a law suit) which would have avoided the restriction on eligibility for benefits, and consequently failed to take that action."). Woloshin could not have taken any action which could have avoided the restriction on his eligibility for benefits under the pre-existing condition exclusion contained in the Policy.

### 3. California Law Would Govern The Policy In The Absence Of An Effective Choice Of Law By The Parties.

California law would govern the Policy if the Court did not give effect to the parties' express choice of law. In the absence of an effective choice-of-law provision, the rights and duties of the parties to a contract with respect to a particular issue are determined by the local law of the state which has "the most significant relationship to the transaction and the parties." Restatement § 188(1). In making this determination, courts consider the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance of the contract; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement § 188(2).

Applying the test set forth in Restatement (Second) of Conflict of Laws § 188, California has the most significant relationship to the Policy between Aetna and Memec. First, Memec's principal place of business was located in San Diego. Second, the largest percentage of Memec's employees covered under the Policy resided in California.[12] Third, negotiations regarding the Policy took place between Aetna and Marsh personnel based in California. Fourth, the Policy was prepared in Aetna's Fresno office. Fifth, the Employer Applications completed by Memec were signed by personnel based in California. Finally, the Policy indicates that it was to be administered through Memec's San Diego office. Based on these undisputed facts, California has the most significant relationship to the parties and the transaction.

---

[12] Although Memec had offices located in 33 different states, 352 of its 776 employees were located in California (44%), 23 of its employees were located in Florida (3%), and only 17 of its employees were located in New York (2%). (Ex. J, Hurley Aff. ¶ 15, Ex. 6.)

The comments to Restatement § 192 also compel the conclusion that California law would govern the Policy in the absence of an effective choice-of-law provision.[13] The comments read in pertinent part:

> In the case of group life insurance, rights against the insurer are usually governed by the law which governs the master policy. This is because it is desirable that each individual insured should enjoy the same privileges and protection. So where an employer arranges for group life insurance for its employees, the rights of a particular employee against the insurer will usually be determined, in the absence of an effective choice-of-law clause and at least as to most issues, **not by the local law of the state where the employee was domiciled and received his certificate but rather by the law governing the master policy with respect to that issue. This will usually be the state where the employer has its principal place of business**.

Restatement § 192, cmt. h (emphasis added). Disability insurance contracts are governed by the same choice-of-law rules as life insurance contracts. See id., cmt. l. Therefore, the law of California, the state of Memec's principal place of business, rather than the law of New York, the state where Woloshin worked and resides, would govern the policy in the absence of an effective choice-of-law provision. This result promotes uniform treatment of beneficiaries under group insurance policies that do not contain a choice-of-law provision.

### 4. New York Law Does Not Govern the Policy

Woloshin cannot set forth any facts that justify the application of New York law to the Policy under a choice-of-law analysis. New York has minimal contacts with the Policy. The

---

[13] In addition to the general choice-of-law provisions contained in § 188, the Restatement contains more specific provisions that address particular classes of claims. See, e.g., Daimler Chrysler Corp. Healthcare Benefits Plan v. Durden, 448 F.3d 918, 923 (6th Cir 2006) (looking to Restatement § 188, which governs the law applicable to determining the validity of a marriage in the absence of a choice-of-law provision, to decide which of two claimants is entitled to surviving spouse benefits.). Here, the law applicable to the Policy in the absence of an effective choice of law can be determined by applying the Restatement provisions pertaining to group insurance policies. See Restatement § 192, cmts. h and l.

contracting parties are not domiciled in New York, the negotiations concerning the terms of the Policy did not occur in New York, and comparatively few Memec employees reside in New York. There is no evidence that the Policy was executed, delivered or performed in New York. The mere fact that Woloshin worked and resided in New York is insufficient to justify the application of New York law to the Policy. See Home for Crippled Children v. Prudential Ins. Co. of Am., 590 F. Supp. 1490, 1501 (W.D. Pa. 1984) ("This group insurance policy covers employees of Servico facilities throughout the United States. [The insured] resides in Pennsylvania as does the Servico facility at which she works but . . . the importance of this contact lessens in the context of a group policy."); Henning v. Metro. Life Ins. Co., 546 F. Supp. 442, 446 (M.D. Pa. 1982) ("[I]t is undisputed that the group policy in question and all amendments thereto were applied for, negotiated, signed, issued and delivered in New York. Moreover, the policy and all amendments have been filed and approved by the Insurance Department of the State of New York. The only important contacts Pennsylvania has with this matter is [sic] that it is the residence of the Plaintiff, a group member under the policy, and the site of one of the many plant facilities of the multi-state employer involved, General Electric."); Prudential Ins. Co. of Am. v. Snicker, No. 66 Civ. 255, 1966 U.S. Dist. LEXIS 6686, at *4 (S.D.N.Y. Sept. 28, 1966) ("While the place of residence and employment of the insured is not to be ignored, standing alone, in the context of group insurance, it is not enough to outweigh contacts growing out of the execution, delivery and performance of the insurance contract itself.").

Therefore, Woloshin cannot establish that the insurance laws of New York apply to his claim, and accordingly this Court must enter summary judgment in favor of Aetna.

**C.** **By Their Own Terms, New York Insurance Law §§ 3234(a)(2) And 3201 Are Inapplicable To The Policy.**

Woloshin's claim must fail even if the Court were to apply the substantive law of New York. Woloshin's allegation that the pre-existing condition provision in the Policy violates New York Insurance Law § 3234, as interpreted by the Court of Appeals in <u>Benesowitz</u>, overlooks the fact that § 3234 applies only to group policies that are "issued or issued for delivery" in New York.[14] The <u>Benesowitz</u> ruling does not apply because Woloshin cannot establish that the Policy was issued or issued for delivery in New York.

Woloshin is expected to argue that the Policy was not actually delivered in Florida, but even if he could prove that to be the case, this argument has no merit for he cannot point to any evidence indicating that the Policy was issued or issued for delivery in New York. As noted above, the parties agreed that the Policy would be issued for delivery in Florida to provide Memec employees with a conversion benefit. Florida-specific provisions were included in the Group Policy and Booklet Certificate, and the Policy expressly stated that it was to be delivered in Florida. Where the parties' intent to deliver the Policy in Florida is manifestly clear from the Policy's own terms, Woloshin cannot argue that the Policy was issued for delivery in New York. See <u>Louis v. Genworth Life & Health Ins. Co.</u>, No. 07-11839-GAO, 2008 U.S. Dist. LEXIS

---

[14] New York Insurance Law § 3234 provides in pertinent part:

(a) Every group or blanket policy **issued** or **issued for delivery** in this state which provides benefits by reason of the disability of the insured and which includes a pre-existing condition provision shall contain in substance the following provision or provisions which in the opinion of the superintendent are more favorable to members of the group ... (2) No pre-existing condition provision shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person.

N.Y. Ins. Law § 3234(a)(2) (emphases added).

75330, at *12 (D. Mass. Sept. 30, 2008) (rejecting the plaintiff's contention that he was entitled to the benefits of § 3234, as construed in <u>Benesowitz</u>, because the policy expressly stated that it was issued in Rhode Island and that the law of that state was to govern the policy, ***even though*** there was evidence that a contract for the performance of some plan administration functions was to be governed by New York law); <u>cf.</u> <u>Rosner v. Metro. Prop. & Liab., Ins. Co.</u>, 236 F.3d 96, 103 (2d Cir. 2000) (stating that when determining the "date of issuance" of an insurance policy, New York courts look to the date of issuance specified by the policy itself, rather than actual date of execution or delivery).[15]

Even in the absence of the express policy terms regarding the place of delivery,[16] Woloshin cannot establish that the policy was issued or issued for delivery in New York. The only connection that the Policy has with the State of New York for purposes of this motion is that Woloshin happens to be a resident of the State, worked there and was covered under the

---

[15] The recitation of the place of delivery in the Policy provides <u>prima facie</u> evidence that the Policy was delivered in Florida. <u>See</u> Restatement (Second) of Contracts § 218, cmt. b. ("A recital of fact in an integrated agreement is evidence of the fact, and its weight depends on the circumstances."); <u>Cannon v. Perry</u>, 144 Idaho 728, 731 (2007) (recitation of a contract's date of execution gives rise to a rebuttable "presumption" that the contract was executed on the date shown); <u>TIE Commc'ns, Inc. v. Kopp</u>, 218 Conn. 281, 292 (1991) (recitation of consideration received provides "prima facie evidence" that consideration was given, shifting the burden of proof to the party disputing the consideration).

[16] Woloshin may argue that the Court should disregard the policy terms regarding place of delivery because Aetna did not comply with its internal guidelines for selecting a "contract state." Quite simply, Aetna's compliance or lack of compliance with its internal guidelines is irrelevant to the determination of which law governs the Policy. <u>See</u> <u>Milinazzo v. State Farm Ins. Co.</u>, 247 F.R.D. 691, 703 (S.D. Fla. 2007) (insurer's failure to comply with internal guidelines was irrelevant to a determination of coverage); <u>De Kwiatkowski v. Bear, Stearns & Co.</u>, 306 F.3d 1293, 1311 (2d Cir. 2002) ("[c]ourts ... have sensibly declined to infer legal duties from internal 'house rules' or industry norms that advocate greater vigilance than otherwise required by law). Moreover, strict adherence with Aetna's internal guidelines still would not have resulted in the delivery of the Policy in New York.

-17-

Policy. Group insurance policies, however, are issued and delivered to the group policyholder, not the individuals covered thereunder. See, e.g., Mayoff v. Hartford Life & Accident Ins. Co., No. 90 C 0571, 1990 U.S. Dist. LEXIS 12467, at *10-11 (N.D. Ill. Sept. 20, 1990) (rejecting plaintiff's argument that although group policies indicated they were delivered in Rhode Island – where the trustee to whom they were purportedly delivered was located – they must actually have been delivered to the plaintiff's residence in Illinois); see also Hamilton v. Standard Ins. Co., 516 F.3d 1069, 1073 (8th Cir. 2008) (Missouri statute not applicable to group insurance policy issued to Idaho group policyholder despite fact that certificate was issued to Missouri citizen, where statute by its terms applied only to insurance policies "issued ... to a citizen of this state,"); Buell v. Sec. Gen. Life Ins. Co., 987 F.2d 1467, 1470-71 (10th Cir. 1993) (Colorado statute not applicable to group insurance policy issued to North Dakota group policyholder despite fact that certificate was issued to Colorado resident, where statute by its terms applied only to insurance policies "delivered or issued for delivery in Colorado"). Accordingly, § 3234(a) does not apply to Woloshin's claim.

Woloshin cannot rely on cases interpreting statutory provisions applicable to liability[17] and individual life policies[18] to argue that the Policy was "issued for delivery" in New York

---

[17] In Preserver Insurance Co. v. Ryba, 10 N.Y.3d 635, 642 (2008), the court construed the phrase "issued for delivery" as used in New York Insurance Law § 3420(d). Section 3420(d) requires insurers disclaiming liability or denying coverage for death or bodily injury arising out of accident occurring in New York to give written notice of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant. In that context, the court concluded that a liability policy is "issued for delivery" in New York if it covers both insureds and risks located in New York. In a group disability insurance context, the employer, not the employee, is the policyholder, and the "location" of the risk is determined by where the plan is administered, not the residence of the employees.

[18] In Zogg v. Penn Mutual Life Insurance Co., 276 F.2d 861, 864-65 (2d Cir. 1960), a case involving a claim made under an individual life insurance policy, the Second Circuit discussed

-18-

because it covers New York residents. Any such argument is foreclosed by New York Insurance

Law § 3201(b)(1), which states in pertinent part:

> A group life, group accident, group health, group accident and health or blanket
> accident and health insurance certificate evidencing insurance coverage on a
> resident of this state shall be deemed to have been delivered in this state
> regardless of the place of actual delivery, **unless the insured group is of the type
> described in: . . . (B) [§ 4235]** except subparagraph (D) where the group policy is
> issued to a trustee or trustees of a fund established or participated in by two or
> more employers not in the same industry with respect to an employer principally
> located within the state, subparagraph (K), (L) or (M) of [paragraph (c)(1)].

(emphasis added).

Section 4235 broadly covers "group accident and health insurance," a category which

includes group disability policies such as the Policy.[19] See N.Y. Ins. Law § 4235(a)(2). The

Policy does not fall into any of the carve outs to the § 4235 exception to the § 3201(b) "deemed

delivered" provision because it was issued to Memec, Woloshin's employer.[20] Here, Woloshin

---

the phrase "delivered or issued for delivery" in determining the applicability of New York
Insurance Law § 155. Section 155 dealt with provisions in life insurance policies excluding or
restricting liability in the event of death caused in a specified manner (e.g. suicide). The court
concluded that the phrase "delivered or issued for delivery" did not foreclose the application of
the statute where the policy was not made in New York because "the primary purpose of the
enactment was to protect residents of the state and … the tests of delivery or issuance for
delivery in the state were adopted as a practical means of achieving such protection." New York
Insurance Law § 3203 has since replaced Section 155. Consistent with the applicability of the
"deemed delivered" provisions in New York Insurance Law § 3201(b) (discussed more fully
below) to group life insurance policies, Section 3203(e) expressly provides that the provisions
contained in Section 3203 are not applicable with respect to group life insurance.

[19] The Policy is of the type identified in subparagraph (A) of § 4235(c)(1), which describes
group policies issued to an employer or to a trustee or trustees of a fund established by an
employer.

[20] Each of the subparagraphs of § 4235(c)(1) identifies policies sold to "non-traditional"
groups that may be deemed delivered in New York. (See Ex. O, N.Y. Ins. Dept., Opinions of
General Counsel, No. 03-10-23.) Subparagraph (D) describes policies issued to joint employer-
labor union trusts. Subparagraph (K) describes policies issued to certain associations and trusts
established by certain associations. Subparagraph (L) describes polices issued to certain financial

has made a binding judicial admission that "Defendant Aetna Life Insurance Company issued a group long-term disability income policy bearing Policy No. GP-701176-A with an effective date of July 1, 2004 to Woloshin's employer, Memec, LLC . . . ." (Ex. A, Second Am. Compl. ¶ 8.)[21] Furthermore, the Policy was, in fact, issued to Memec, LLC for the benefit of its employees. Thus, the Policy is of the type identified in subparagraph (A) of § 4235(c)(1), which describes group policies issued to an employer or to a trustee or trustees of a fund established by an employer. Group disability policies sold to "traditional" policyholders such as employers like Memec are not considered "deemed delivered" in New York. (See Ex O, N.Y. Ins. Dept., Opinions of General Counsel, No. 03-10-23; see also Ex. P, N.Y. Ins. Dept., Opinions of General Counsel, No. 04-10-15; Ex. Q, N.Y. Ins. Dept., Opinions of General Counsel, No. 06-12-18.)

Where the New York legislature has concluded that it is necessary to extend statutory protections to New York residents covered under group insurance policies issued for delivery in states other than New York, it has expressly deemed these policies to be delivered in New York. See N.Y. Ins. Law. § 3201(b). To apply New York Insurance Law § 3234(a)(2) to all group disability policies which cover New York residents would make the "deemed delivered" provision of New York Insurance Law § 3201(b) superfluous. It is well-settled that courts

---

organizations (e.g. banks, issuers of credit cards, credits unions). Finally, subparagraph (M) describes policies issued to certain "discretionary groups" approved by the Superintendent of Insurance. N.Y. Ins. Law § 4235(c)(1)(M). None of the aforementioned subparagraphs accurately describes the Policy.

[21] This allegation is a binding judicial admission. See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) ("the allegations in the Second Amended Complaint are 'judicial admissions' by which Color Tile Committee was 'bound through the course of the proceeding.'" (quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985) (party cannot contradict its own pleading with affidavits) and citing Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997))).

should avoid statutory interpretations that render provisions superfluous. Courts must give effect, if possible, to every clause and word of a statute. See State St. Bank & Trust Co. v. Salovaara, 326 F.3d 130, 139 (2d Cir. 2003).

Finally, any argument by Woloshin that the district court in Benesowitz determined that § 3234(a)(2) applied to that long-term disability policy even though it was delivered in Delaware must fail for two reasons. First, the district court found that none of the exceptions to § 3201(b)(1) applied. See Benesowitz v. Metro. Life Ins. Co., 386 F. Supp. 2d 132, 136 (E.D.N.Y. 2005). Here, Woloshin has admitted that the Policy was sold to Memec, and therefore the exception in § 3201(b)(1)(B) applies. Second, the district court's finding in Benesowitz that none of the exceptions to § 3201(b)(1) applied was based upon MetLife's abandonment of its argument that § 3234 was inapplicable because the policy was delivered in Delaware. Initially, MetLife relied on the plain language of § 3234(a)(2) to support its argument that the statute did not apply because the policy was delivered in Delaware rather than New York. (See Ex. R, Certified Copies of Pleadings in Benesowitz v. Metropolitan Life, Case No. 2:04-CV-00805, Ex. 2 at 15.) Benesowitz countered that, because he was a New York resident, the policy was "deemed delivered" in New York under § 3201(b)(1) and baldly asserted without even reciting the language in subparagraphs (A), (B), or (C) that none of those exceptions applied. (See id., Ex. 3 at 8.) In its Reply, MetLife abandoned its argument that § 3234 did not apply. It did not quote the language of § 3201, explain why any exception applies or offer any further evidence demonstrating that Delaware law applied. (See id., Ex. 4.) Not surprisingly, the district court stated simply that "[t]he insured group (i.e. Honeywell employees) is not described in any of the exemptions" in § 3201(b)(1), Benesowitz, 386 F. Supp. 2d at 136, and then proceeded to enter

summary judgment in favor of MetLife, reasoning, based on <u>Pulvers</u> that § 3234(a)(2) allowed the plan to create a complete bar for pre-existing conditions.

In sum, § 3234, as interpreted by the Court of Appeals in <u>Benesowitz</u>, is controlling only if the general rule of § 3201(b)(1) applies to the instant action. As the general rule of § 3201(b)(1) does not apply to the instant action, and Woloshin cannot show that the Policy was issued or issued for delivery in New York as required by § 3234, summary judgment must be granted in favor of Aetna.

**D.** **The Application Of A Single State's Laws To Group Insurance Policies Furthers ERISA's Purposes.**

Woloshin's argument that his place of residence should govern the determination of eligibility for benefits under the plan is inconsistent with ERISA's objective of providing uniformity in the disbursement of plan benefits. ERISA strives to provide uniformity in the administration of employee benefit plans. <u>See</u> <u>Eglehoff v. Eglehoff</u>, 532 U.S. 141, 148 (2001) ("One of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'") (quoting <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 9 (1987)); <u>Aetna Life Ins. Co. v. Borges</u>, 869 F.2d 142, 147 (2d Cir. 1989) ("[T]he goal of ERISA [is] to provide uniform, national regulation of benefit plans."); <u>Wang Labs., Inc. v. Kagan</u>, 990 F.2d 1126, 1128-29 (9th Cir. 1993) ("Where a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair."). For this reason, ERISA preempts state laws that relate to such plans.[22]

---

[22] <u>See</u> <u>N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 657 (1995) ("The basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.");

Although ERISA explicitly saves state laws regulating insurance from preemption,[23] the application of more than one state's laws to group insurance policies governed by ERISA frustrates the goal of uniformity that is central to its statutory framework. Forcing plan administrators to apply the laws of multiple states rather than the law of a single state (i.e. the law chosen by the parties or the law governing the policy in the absence of an effective choice of law) in construing the plan's terms would yield inconsistent and unpredictable results in the determination of a claimant's eligibility for benefits, contrary to the principles underlying ERISA. See Egelhoff, 532 U.S. at 148 ("Uniformity is impossible . . . if plans are subject to different legal obligations in different States."); Durden, 448 F.3d at 928 ("Enforcing choice of law provisions in ERISA plans takes the object of uniformity one step further by ensuring that all issues not preempted by federal law will be resolved by application of the chosen state's law. In general, this too will add certainty to the claim administration process leading to more efficiency and less litigation.").

Where, as here, an ERISA plan covers hundreds of participants residing in 33 states, the potential for inefficiencies in administration and conflicting results increases dramatically. The determination of a claimant's eligibility for disability benefits may vary depending on the insurance laws of the relevant state. The application of the laws of multiple states to group insurance policies would result in potentially conflicting legal obligations of plan administrators, unnecessary administrative expense, and an increased possibility of litigation. Such

---

Durden, 448 F.3d at 928 ("Numerous issues which would otherwise be decided by state law are preempted by ERISA for the specific purpose of providing uniformity. This uniformity allows for a much more efficient and streamlined claim administration process.") (citations omitted).

[23] See 29 U.S.C. § 1144(b)(2)(A); Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 739-47 (1985).

consequences only serve to frustrate ERISA's purpose. For this reason, the Court must reject any argument that New York law should govern the adjudication of Woloshin's claim for benefits where the New York law in question by its very terms does not apply.

## IV.     CONCLUSION

The Court must grant Aetna's motion for summary judgment because Woloshin cannot establish that New York law applies or should apply to his claims under the Policy. First, the application of New York law to Woloshin's claim is inconsistent with applicable choice-of-law rules. The Policy contains an effective choice-of-law provision stating that it is governed by Florida law. Even in the absence of this provision, the Policy would be governed by the law of California—the state where Memec was headquartered, where the largest percentage of Memec's employees resided, where the Policy was negotiated and prepared, and where the plan was administered. New York's only connection with the Policy is that 2% of covered employees, including Woloshin, resided and may have worked there. Second, New York Insurance Law § 3234 does not apply to the Policy because it is a group disability policy that was not "issued or issued for delivery" in New York. Third, Woloshin's place of residence cannot determine the law relating to his eligibility for benefits under the Policy because such a rule would frustrate ERISA's goal of providing uniformity in the administration of employee benefit plans. Group insurance policies often cover thousands of claimants residing in many different states. Application of the law of the state in which each claimant resides would result in conflicting obligations, administrative inefficiencies and increased litigation.

Dated: Hartford, Connecticut
December 1, 2008

DEFENDANT,
AETNA LIFE INSURANCE COMPANY

By _James H. Rotondo_

James H. Rotondo (JR-3966)
jhrotondo@daypitney.com
Andrea E. K. Thomas (AT-8166)
athomas@daypitney.com
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103
(860) 275-0197
(860) 881-2470 (fax)
Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2008, true and accurate copies of: (1) Aetna's Notice of Motion for Summary Judgment, (2) Aetna's Memorandum of Law in Support of Its Motion for Summary Judgment, (3) Aetna's Local Rule 56.1(a) Statement of Material Facts, and (4) Exhibits in Support of Aetna's Memorandum of Law in Support of Its Motion for Summary Judgment, were served by overnight mail on Plaintiff's counsel of record. I further certify that upon completion of briefing the foregoing will be filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties will be able to access this filing through the Court's CM/ECF System.

_James H. Rotondo_

James H. Rotondo (JR-3966)