**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

BRIAN WOLOSHIN, individually )
and on behalf of all others )           Case No. 07 CV 6664(KMK)(GAY)
similarly situated, )
)                                        ECF Case
                        Plaintiff, )
)
            vs. )
)
AETNA LIFE INSURANCE )
COMPANY, )
)
                        Defendant. )

———————————————————————

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ....................................................................................... 1

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 2

ARGUMENT............................................................................................. 7

I.  MATERIAL FACTS EXIST THAT SUPPORT
    THE APPLICATION OF YORK LAW TO PLAINTIFF'S CLAIM ........................... 7

II. NEW YORK LAW GOVERNS PLAINTIFF'S CLAIM ........................................ 8

    A.  The SPD Governs The Rights Of The Parties
        Because The Policy Conflicts With The SPD...........................................8

    B.  Plaintiff Has Demonstrated that He Is "Likely to be Harmed"
        As A Result Of Aetna's Intentionally Not Informing Him Of
        The Choice Of Law Provision..........................................................11

    C.  Federal Choice Of Law Rules Mandate That New York Law
        Governs Plaintiff's Claims Because New York has the Most Significant
        Relationship To The Transaction and The Parties....................................13

III. NO FACTUAL OR LEGAL BASIS EXISTS FOR APPLYING THE LAWS OF
     EITHER FLORIDA OR CALIFORNIA TO PLAINTIFF'S CLAIMS ................... 20

    A.  There is No Basis to Apply Florida Law To The SPD or The Policy................. 20

    B.  California Law Does Not Govern the SPD ......................................... 23

IV. APPLYING NEW YORK LAW IN THIS ACTION WOULD FURTHER THE
    PURPOSE OR ERISA............................................................................ 23

V.  NEW YORK INSURANCE LAW §§ 3234(A)(2) AND 3201 ARE APPLICABLE
    PLAINTIFF'S RIGHTS UNDER THE SPD.................................................... 24

CONCLUSION............................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Adickes v. S.H. Kress & Co.,
398 U.S. 144 (1970)...........................................................................................................7

Avondale Indus., Inc. v. Travelers Indem. Co.,
774 F. Supp. 1416 (S.D.N.Y. 1991)...........................................................................14, 23

Boseman v. Connecticut General Life Ins. Co.,
301 U.S. 196 (1937).........................................................................................................10

Brady v. Town of Colchester,
863 F.2d 205 (2d Cir. 1988).............................................................................................7

Burke v. Kodak Ret. Income Plan,
336 F.3d 103 (2d Cir. 2003)...............................................................................8, 11, 12

Chambless v. Masters, Mates & Pilots Pension Plan,
772 F.2d 1032 (2d Cir. 1985)...........................................................................................10

Croskey v. Ford Motor Company-UAW,
No. 01-1094, 2002 U.S. Dist. LEXIS 8824 (S.D.N.Y. May 2, 2002) ............................13

DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden,
448 F.3d 918 (6th Cir. 2006) ...........................................................................................22

Eli Lilly do Brasil, Ltda v. Fed. Express Corp.,
502 F.3d 78 (2d Cir. 2007)..................................................................................13, 14, 23

Heidgerd v. Olin Corp.,
906 F.2d 903 (2d Cir. 1990).............................................................................................9

In re Bidermann Indus. U.S.A.,
241 B.R. 76 (Bankr. S.D.N.Y. 1999)...............................................................................15

In re Koreag, Controle et Revision S.A.,
961 F.2d 341 (2d Cir. 1992).............................................................................................13

In re O.P.M. Leasing Servs., Inc.,
28 B.R. 740 (Bankr. S.D.N.Y. 1983)..........................................................................14, 15

International Ins. Co. v. Stonewall Ins. Co.,
86 F.3d 601 (6th Cir. 1996) ............................................................................................16

James v. New York City Dist. Council of Carpenters' Benefits,
947 F. Supp. 622 (E.D.N.Y. 1996) ........................................................................8, 9, 10

John Hancock Mut. Life Ins. Co. v. Dorman,
108 F.2d 220 (9th Cir. 1939) .........................................................................................10

KIC Chems v. ADCO Chem. Co.,
No. 95-6321, 1996 U.S. Dist. LEXIS 3244 (S.D.N.Y. Mar. 19, 1996) .........................12

Krauss v. Manhattan Life Ins. Co.,
643 F.2d 98 (2d Cir. 1981).........................................................................18, 19, 23, 24

Layaou v. Xerox Corp.,
238 F.3d 205 (2d Cir. 2001)...........................................................................................10

Layaou v. Xerox Corp.,
330 F. Supp. 2d 297 (W.D.N.Y. 2004) ..........................................................................10

Med. Mutual of Ohio v. Desoto,
245 F.3d 561 (6th Cir. 2001) ...................................................................................17, 18

Metro. Life Ins. Co. v. Manning,
568 F.2d 922 (2d Cir. 1977)...........................................................................................16

Moore v. Metro. Life Ins. Co.,
856 F.2d 488 (2d Cir. 1988).............................................................................................9

Moriarity v. United Tech. Corp. Represented Emples. Retirement Plan,
158 F.3d 157 (2d Cir. 1988).............................................................................................9

Norlin Corp. v. Rooney, Pace, Inc.,
744 F.2d 255 (2d. Cir. 1984)..........................................................................................19

Quaratino v. Tiffany & Co.,
71 F.3d 58 (2d Cir. 1995).................................................................................................7

Robilotta v. Fleet Boston Fin. Corp. Group Disability Income Plan,
No. 05-5284, 2008 U.S. Dist. LEXIS 25689 (E.D.N.Y. March 31, 2008) ...............10, 11

Samuels v. Mockry,
77 F.3d 34 (2d Cir. 1996).................................................................................................7

Segal v. City of New York,
459 F.3d 207 (2d Cir. 2006)..............................................................................................7

Sheehan v. Metro. Life Ins. Co.,
368 F. Supp. 2d 228, 261 (S.D.N.Y. 2005).............................................................................11, 12

Shore v. PaineWebber Long Term Disability Plan,
No. 04-cv-4152, 2007 U.S. Dist. LEXIS 77039 (S.D.N.Y. October 27, 2007)...................9, 10, 13

Tyler v. AIG Life Insurance Company,
273 Fed. Appx. 778 (11th Cir 2008).............................................................................................23

Vann v. City of New York,
72 F.3d 1040 (2d Cir. 1995).............................................................................................................7

Varda, Inc. v. Insurance Company of North America,
No. 85-8533, 1992 U.S. Dist. LEXIS 7714 (S.D.N.Y. May 26, 1992) ...................................21, 22

Walter E. Heller & Co. v. Video Innovations, Inc.,
730 F.2d 50 (2d Cir. 1984).............................................................................................................22

Wang Labs, Inc. v. Kagan,
990 F.2d 1126 (9th Cir. 1993) .......................................................................................................24

Wells Fargo Asia Ltd. v. Citibank N.A.,
936 F.2d 723 (2d Cir. 1991)...........................................................................................................13

Whittaker Corp. v. Calspan Corp.,
810 F. Supp. 457 (W.D.N.Y. 1992) ...............................................................................................12

**STATE CASES**

Auten v. Auten,
308 N.Y. 155 (1954) ......................................................................................................................14

Benesowitz v. Metro. Life Ins. Co.,
8 N.Y.3d 661 (2007) .....................................................................................................................5, 6

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

29 C.F.R. 2520.102-2(a) ...............................................................................................................10

29 C.F.R. § 2520.102(b) ..................................................................................................................9

Fed. R. Civ. P. 56(c) .......................................................................................................................7

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Conflicts of Law, § 188 ......................................................................................................16, 17, 18

New York Insurance Law § 3234(a)(2) ............................................................................. passim

Restatement (Second) of Conflict of Laws .......................................................................... passim

## INTRODUCTION

Plaintiff Brian Woloshin ("Plaintiff" or "Woloshin") respectfully submits this memorandum of law in opposition to Aetna Life Insurance Company's ("Aetna" or "Defendant") Motion for Summary Judgment (the "Motion").

## PRELIMINARY STATEMENT

Aetna's Motion seeks to permanently bar Mr. Woloshin from receiving the long-term disability benefits for which he contracted with Aetna, on the basis that (i) federal choice-of-law rules, when applied to the Policy issued to Woloshin's employer Memec, LLC, require the application of either Florida or California law to Plaintiff's claims – rather than New York law, (ii) the application of New York law to Plaintiff's claim would be contrary to New York insurance law, and (iii) that the application of New York law to Plaintiff's claim would run afoul of the Employee Retirement Income Security Act of 1974's ("ERISA") policies of uniformity. As demonstrated herein, each of these arguments is incorrect and must fail because each is based on the faulty premise that the long-term disability policy issued to Memec by Aetna (the "Policy"), a document that was never provided to Mr. Woloshin, governs the relationship between Plaintiff and Defendant.

The facts of this case dictate, however, that the summary plan description ("SPD") issued to Plaintiff, and not the Policy, controls the relationship between Mr. Woloshin and Aetna because the two documents are in conflict with each other. Such conflict arises due to the fact that the choice of law provision that Aetna is now seeking to invoke in its attempt to permanently deny to Mr. Woloshin the long-term disability

benefits for which he contracted was omitted from the SPD, the only document ever delivered to Plaintiff.

Furthermore, because the SPD does not contain a choice of law provision, federal choice of law rules dictate that New York law, and not the laws of Florida or California apply.

Moreover, application of New York law furthers the express purpose of ERISA of providing more coverage and protection to beneficiaries, and outweighs any question of "uniformity," especially when the issue of uniformity is only implicated by Defendant's act of distributing an SPD that was in conflict with the Policy at issue.

Finally, despite Defendant's contentions, Plaintiff is entitled to the protections of New York Insurance Law §§ 3234(A)(2) and 3201.

For these reasons, Defendant's Motion must be denied.

## STATEMENT OF FACTS

### The Memec Long-term Disability Policy

Memec, acting with or though its insurance broker Marsh & McLennan, contacted Aetna in the first half of 2004 in connection with Memec's desire to offer its employees a group long-term disability plan (the "Plan"). Ex. 13 (Hurley Tr., p. 13, 21 – p. 13, 4). Because Memec is a California based company with approximately 50% of its employees and its human resources department (which was to administer the plan) located in California, Aetna crafted the Policy to be sitused in California. Ex. 1 (Febles, Tr., p. 77, 2-24); Ex. 19 (Hurley Dep. Ex. 9); Ex. 13 (Hurley Tr., pp. 51-52).

Before the Policy was issued, Memec requested that the Plan offer a conversion benefit to its employees, i.e., allow an employee to convert the Plan to an individual plan

2

upon termination of employment. Ex. 13 (Hurley Tr., p. 17, 12-21). Aetna, however, was not approved by the California Department of Insurance to offer this conversion benefit (if the plan was to be sitused in California), placing its sales department at risk of losing the sale to Memec, not making its sales goals, and upsetting its largest broker, Marsh & McLennan. Ex. 5 (Bjarno Tr., p. 87, 25 - p. 88, 10; p. 89, 20-24; p. 101, 10-24); Ex. 26 (France Dep. Ex. 3 at AE00000375). In order to save the sale, and its relationship with Marsh, Aetna decided to situs the Plan in Florida -- even though Aetna was not approved to offer the conversion benefit in Florida -- in the hope that Aetna would eventually be approved to offer the benefit in Florida some time after the Policy was issued.[1]

Moreover, in attempting to write the Policy in Florida, Aetna's underwriters violated Aetna's legal guidelines.[2] See, e.g., Ex. 11 (France Dep. Ex. 2 at AE0000330.003-4; Ex. 12 (France Tr., p. 43, 14-16; p. 49, 3-13, 18-25; p. 51, 5-8; p. 52, 15-25, p. 53, 2-3; p. 61, 18- p. 62, 8.[3]

---

[1]     See, e.g., Ex. 27 (France Dep. Ex. 4); Ex. 12 (France Tr., p. 62, 16-19 ("Because it was my understanding that LTD conversion was the issue, that it was no better or no worse to go with Florida or California. It wasn't available in either"); France Tr., p. 65, 4- 11 ("To date, this feature is not approved in Florida either, although we have high hopes that it will be soon"); see also Ex. 1 (Febles Tr., p. 93, 11-25); Ex. 7 (Febles Dep. Ex. 5).

[2]     Aetna's legal guidelines required that where a state other than the location of the headquarters of the insured is chosen as the contract state, all of the following requirements be met: (i) a substantial number of employees are located in the state; (ii) there is a customer office located in the state through which the plan will be administered; and (iii) an employee authorized by the customer to sign the Master Application is located in the state. Ex. 10 (France Dep. Ex 1).

[3]     Defendant's recitation of the facts, which appear to argue that Aetna' decision to situs the policy in Florida was appropriate, contradict themselves at every turn. See, e.g., Dft's Br., p. 3 (arguing that Aetna's underwriting department assumed the plan would be administered in Florida, but in the same sentence concede that the SPD, drafted by Aetna, stated the plan was to be administered in California); Dft's Br., p.4 (arguing that Memec's insurance application was drafted for execution in Florida by Memec payroll Manager Wansley (with no address above her name), but in the next sentence conceding that Aetna knew that Ms. Wansley was based in

3

In an apparent attempt to keep from Memec the lengths it needed to go to write the Plan, Aetna failed to communicate to Memec that the Plan would need to be sitused in Florida, or that the Policy would contain a Florida choice of law provision.[4]

**Plaintiff's Claim for Benefits under the Plan and the Filing of this Action**

Plaintiff Brian Woloshin, a New York resident, began his employment with Memec on March 15, 2004, and began selling semiconductors out of Memec's Hauppauge, New York, office. Ex. 15 (Woloshin Tr., p. 48, 13-17). Memec's corporate headquarters was based in California. Ex. 15 (Woloshin Tr., p. 10, 9-16). As part of his benefits package, Memec offered Mr. Woloshin the option of purchasing long-term disability coverage through Aetna, whereby Plaintiff would be required to pay a portion of the premium and Memec would pay the balance. Ex. 15 (Woloshin Tr., p. 61, 17- p. 64, 14; p. 90, 9-14). Plaintiff opted to enroll in the Plan and was provided with a copy of the SPD which explained his coverage and rights under the Plan, but did not contain a choice of law provision. Ex. 22 (Woloshin Dep. Ex. 6); Ex. 15 (Woloshin Tr., p. 73, 19, - p. 74, 13; p. 76, 13-20). During his employment with Memec, Plaintiff was never provided with a copy of the Policy. Ex. 15 (Woloshin Tr., p. 82, 12-17); Ex. 23 (Woloshin Dep. Ex. 7); Ex. 20 (Woloshin Aff., ¶ 6).

As a result of Aetna's failure to inform Mr. Woloshin of the choice of law

---

California where the plan was to be administered). Ex. 25 (Hurley Dep. Ex. 11 (Master Application signed by "manager" with no address); Ex. 13 (Hurley Tr., pp. 42-46); Exs. 17-18 (Hurley Dep. Exs. 7; 8); Ex. 13 (Hurley Tr., pp. 47, 15-20); Ex. 19 (Hurley Dep. Ex. 9); Ex. 13 (Hurley Tr., pp. 51-52) (Application signed by Aetna employee McLeod, in California).

[4]    Indeed, the evidence cited by Aetna in support of the fiction that Aetna and Memec "agreed that the Policy would be issued for delivery in Florida" (Dft's Brf 4-5), does not support Aetna's interpretation of the facts, because it cannot. Thus, there is no evidence that Memec ever agreed to apply Florida law to 100% of its employees, where 98% of its employees did not reside in Florida (Dft's Br., p. 2).

provision noted on the cover of the Policy, and not contained in the SPD issued to Mr. Woloshin, Mr. Woloshin wrongfully assumed that New York law would govern the terms of the Plan. Ex. 15 (Woloshin Tr., p. 80, 18-21); Ex. 20 (Woloshin Aff., ¶¶ 7- 8). Moreover, had Mr. Woloshin been made aware that the laws of a state other than New York would be applied to the terms of the Plan, Mr. Woloshin would have explored other insurance alternatives. Ex. 20 (Woloshin Aff., ¶ 9).

Mr. Woloshin, who is 48 years old, was first diagnosed in 1997 with dilated cardiomyopathy, arrhythmia and ventricular tachycardia ("VT"). Ex. 28. Mr. Woloshin's condition progressively worsened, to the point that his heart was functioning at about 50% of that of a healthy heart. Exs. 29, 30. Additionally, after surgery to implant a defibrillator to treat his VT, Mr. Woloshin developed hyperthyroidism (caused by an anti-arrhythmia drug) and Grave's Disease. Exs. 31-36.

In March, 2005, as a result of his inability to work caused by the progression of his cardiomyopathy, compounded by VT and the side effects of hyperthyroidism and damage to his thyroid gland from his treatment with VT medication, Plaintiff made a claim for long-term disability benefits under the Plan. Ex. 24 (Woloshin Dep. Ex. 17). Plaintiff's disability claim was denied by Aetna on the basis of Aetna's determination that Mr. Woloshin's disability arose from a preexisting condition. Ex. 15 (Woloshin Tr., p. 87, 4 – 17); Ex. 39 (Woloshin Dep. Ex. 10).

Following the New York Court of Appeals decision in Benesowitz v. Metro. Life Ins. Co., 8 N.Y.3d 661, 870 N.E.2d 1136, 2007 N.Y. LEXIS 1618 (N.Y. 2007), which held that insurers may toll benefits pursuant  to a pre-existing conditions exclusion during the first twelve months of coverage, but cannot impose an absolute bar to coverage,

Plaintiff filed this action seeking to have the Court determine that Aetna improperly denied him (and other members of the class) disability benef its on the basis of a pre-existing condition in violation of New York law.

Plaintiff's Second Amended Class Action Complaint alleges that during the Class Period, Aetna breached its fiduciary duties under ERISA by: (i) including in Aetna's long-term disability insurance policies Pre-Existing Condition Clauses that violated New York law; and (ii) utilizing these Pre-Existing Condition Clauses to deny benefits to Plaintiff and fellow class members which they were lawfully due. Specifically, the Complaint alleges that if Aetna determined that: (i) a beneficiary under a long-term disability policy had a pre-existing condition; and (ii) the pre-existing condition arose during the first 12 months following the effective date of coverage, Aetna refused to pay such beneficiary any long-term disability benefits, including disability benefits that were statutorily due and owing after the expiration of the 12 months following the effective date of coverage. Cplt., ¶ 32.

Aetna's disability policy language and conduct, however, was in direct contravention of New York Insurance Law § 3234(a)(2), which states in relevant part that "no pre-existing condition provision shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person." Cplt., ¶¶ 3, 31. See also Benesowitz v. Metro. Life Ins. Co., 8 N.Y.3d at 870.

Now, almost four years after being denied his contractually entitled disability benefits under the Plan, Aetna's instant Motion seeks to permanently deny Mr. Woloshin benefits under the Plan on the theory that he should be bound by a choice-of-law provision that was never communicated to him; or in the alternative, that California, and

not New York law, should apply because California has the most significant contacts with the Policy, and therefore the claims asserted herein. As set forth below, Defendants are wrong on all counts; accordingly, summary judgment must be denied.

## **ARGUMENT**

### I.    **MATERIAL FACTS EXIST THAT SUPPORT THE APPLICATION OF NEW YORK LAW TO PLAINTIFF'S CLAIM**

#### **Legal Standard**

Defendant's Motion must be denied because the facts demonstrate that New York law applies to Plaintiff's claim. At a minimum, Defendant has failed to demonstrate that there is "no genuine issue as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); see also Segal v. City of New York, 459 F.3d 207, 211 (2d Cir. 2006). This Court may grant summary judgment to Defendant only if the evidence, viewed in the light most favorable to Mr. Woloshin, presents no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. See Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996). In deciding this motion, the Court must draw all reasonable inferences in the non-moving party's favor. See Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995); see also Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) (If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper") (citing Brady v. Town of Colchester, 863 F.2d 205, 210-11 (2d Cir. 1988)).

7

As demonstrated herein, New York law governs Plaintiff's claim because: i) the SPD (which does not contain a choice-of-law provision), and not the Policy, governs the rights of the parties; ii) the absence of the choice-of-law provision from the SPD will result in "likely harm" to Plaintiff; and iii) federal choice-of-law rules mandate the application of New York law here.

Because the facts of this case dictate that New York law governs Plaintiff's claim, Defendant's Motion must be denied.

## II.    NEW YORK LAW GOVERNS PLAINTIFF'S CLAIM

### A.    The SPD Governs The Rights Of The Parties
### Because The Policy Conflicts With The SPD

One of the most important documents that beneficiaries of ERISA-governed plans receive is a summary of the plan, called the summary plan description or SPD. The SPD provides beneficiaries with a summary of the material provisions of their plan. Plaintiff received the SPD, which was delivered to him in New York.[5]

In light of the importance held by a plan's summary plan description, courts have held that where the terms of an insurance policy "conflict" with the terms of a summary plan description, the summary plan description governs the relationship between the parties. See James v. New York City Dist. Council of Carpenters' Benefits, 947 F. Supp. 622, 628 (E.D.N.Y. 1996)(where, as here, the "terms of a plan and those of a plan summary conflict, it is the plan summary that controls"); Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 113 (2d Cir. 2003)("The district court ruled, in accordance with

---

[5]    Aetna concedes that here, the contract of insurance consists of "the [Policy], the Booklet Certificate, and the Summary of Coverage (i.e., the SPD)." See Dft's LR 56.1(a) Statement, ¶ 2.

Second Circuit precedent, that because the plan and the SPD were in conflict, <u>the SPD controlled.</u>")(emphasis added).[6]

> In <u>James,</u> the court explained the significance of the summary plan description:
>
> The primary method by which an employer communicates to its employees with respect to an ERISA welfare plan is through a summary plan description, <u>Moore v. Metro. Life Ins. Co.,</u> 856 F.2d 488, 492 (2d Cir. 1988), which '<u>must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries</u>' with   respect to a plan's provisions. 29 C.F.R. § 2520.102(b). As the Second Circuit recognized in <u>Heidgerd v. Olin Corp.,</u> 906 F.2d 903 (2d Cir. 1990):
>
>> ERISA and the regulations promulgated under it. . . contemplates that the summary will be an employee's primary source of information regarding employment benefits, and <u>employees are entitled to rely on the descriptions contained in the summary.</u> To allow the Plan to contain different terms that supersede the terms of the [summary] would defeat the purpose of providing the employees with summaries. . . .
>>
>> * * *
>>
>> Accordingly, we conclude that the district court properly held that <u>where, as here, the terms of a plan and those of a plan summary conflict, it is the plan summary that controls.</u>
>
> Id. at 907-08 (emphasis added).

<u>James,</u> 947 F. Supp. at 628; <u>see also</u> <u>Shore v. PaineWebber Long Term Disability Plan,</u>

No. 04-cv-4152, 2007 U.S. Dist. LEXIS 77039 at *24-25 (S.D.N.Y. October 27, 2007).

Here, it is uncontested that the SPD, which was required to be "sufficiently comprehensive to apprise" Plaintiff of his "rights and obligations under the plan" and the "circumstances which may result in disqualification, ineligibility, or denial or loss of

---

[6]    <u>See also</u> <u>Moriarity v. United Tech. Corp. Represented Emples. Retirement Plan</u>, 158 F.3d 157, 160 (2d Cir. 1988) ("Echoing a well-established proposition, the district court then held that 'when the SPD conflicts with the terms of the plan, <u>the SPD controls . . . the determination of Plaintiff's rights under the Plan</u>'")(emphasis added).

benefits" (29 C.F.R. 2520.102-2(a)),[7] failed to inform Plaintiff that Aetna had decided

that the terms of the Policy would be governed by laws of the state of Florida, as set forth

in the Policy's choice-of-law provision.

Therefore, because the choice-of-law provision found in Policy was absent from

the SPD, the two documents are in "conflict" with one another. Accordingly, in light of

this conflict, the law requires that the SPD governs.

Furthermore, where, as here, the SPD's omission of information that results in a

"significant reduction in plaintiff's benefits" constitutes a conflict (Layaou v. Xerox

Corp., 330 F. Supp. 2d 297, 303 (W.D.N.Y. 2004)), the SPD controls the relationship

between the parties.[8]

As this Court recently held in Shore:

> [C]ourts have recognized that where the SPD does not contain a benefit
> forfeiture clause, then such a forfeiture contained in the underlying plan
> will not be enforced against a participant.

2007 U.S. Dist. LEXIS 77039 at *25 (citing James, 947 F. Supp. at 628; see also

Robilotta v. Fleet Boston Fin. Corp. Group Disability Income Plan, No. 05-5284, 2008

---

[7]    See Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032, 1040 (2d Cir.
1985) (Summary plan description required to explain "full import" of provisions affecting
employee); Layaou v. Xerox Corp., 238 F.3d 205, 212 (2d Cir. 2001) ("if a summary plan 'is
inadequate to inform an employee of his rights under the plan, ERISA empowers plan
participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that
result from the failure to disclose'").

[8]    This has been the law in the insurance context prior to the advent of SPDs. Courts have
held that where there is a difference between a group policy and a certificate of insurance, the
certificate of insurance is deemed to create rights or liabilities and is governed by its own set of
laws. See John Hancock Mut. Life Ins. Co. v. Dorman, 108 F.2d 220 (9th Cir. 1939) (Where the
certificate of insurance and the master policy materially differed, the court held that the certificate
of insurance was part of the contract insuring the insured). In these situations, courts have held
that the law of the place where the certificate or SPD was delivered to the insured governs.
Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 203 (1937), is distinguishable because
the Supreme Court held that the certificate of insurance was not a separate contract since the
certificate was not among the documents declared to constitute the entire contract of insurance,
which is not the case here (see n.5 herein).

U.S. Dist. LEXIS 25689, at *27-28 (E.D.N.Y. March 31, 2008). Thus, the SPD must contain all of the "circumstances which may result in disqualification, ineligibility or denial of benefits," and any benefit forfeiture clause not found in the SPD cannot be enforced against any policyholder under the policy. Id. at *27.

Here, the SPD failed to contain all of the "circumstances which may result in disqualification, ineligibility or denial of benefits." In particular, the SPD did not contain the choice-of-law provision. Applying the Policy's Florida choice-of-law provision to Plaintiff's claim for benefits arising from a pre-existing condition would result in a permanent "disqualification, ineligibility or denial of benefit[s]" to Plaintiff. Accordingly, the omission of the choice-of-law provision from the SPD creates a "conflict," thereby requiring that the SPD govern the relationship between the parties.

**B.      Plaintiff Has Demonstrated that He Is "Likely to be Harmed" As a Result of Aetna's Intentionally Not Informing Him of the Choice of Law Provision**

Once a "conflict" between an insurance policy and a summary plan description has been established, then, in order to "take advantage of a deficient SPD, an employee suing under ERISA must show prejudice resulting from the deficiency" in the SPD. Sheehan v. Metro. Life Ins. Co., 368 F. Supp. 2d 228, 261 (S.D.N.Y. 2005); Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 113 (2d Cir. 2003) ("This 'likely prejudice' standard avoids the use of harsh common law principles to defeat employees' claims based on a federal law designed for their protection")(emphasis added).

Here, the simple fact that Plaintiff has been denied the benefits for which he contracted under the Plan -- and is defending this Motion -- is ample evidence that

11

Plaintiff was, and is, "prejudiced" or "harmed" by the omission of the choice-of-law provision from the SPD.

Defendant's attempt to categorize the choice-of-law provision in the Policy as an "idiosyncratic contingency that <u>might affect</u>" a plan participant (<u>see</u> Dft's Br., n.11) (emphasis added) is illogical in the face of Defendant's Motion, which seeks to permanently deny the disabled Mr. Woloshin his disability benefits on the basis of this intentionally omitted "idiosyncratic contingency."[9]

Defendant further argues that Plaintiff "cannot establish that he suffered any prejudice" as a result of the omission of the Florida choice-of-law provision in the SPD. Dft's Br., n.11. Plaintiff, however, has testified that: (a) he never saw the Policy; (b) the choice-of-law provision was never communicated to him; (c) he wrongfully assumed that New York law governed the terms of the Plan (Ex. 15 (Woloshin Tr., p. 80, 18-21)); (d) the Plan was optional, and that he paid a portion of the premiums; and (e) had he known that his rights under the Plan would be governed under the laws of a state other than New York, he "would have discussed this fact with the Memec, LLC human resources department and explored other insurance options available" to him. Ex. 20 (Woloshin Aff. ¶ 9). Therefore, at a minimum, a question of fact exists as to whether Plaintiff was "likely harmed." <u>See</u> <u>Burke</u>, 336 F.3d at 113; <u>Sheehan</u>, 368 F. Supp. 2d at 262 ("likely prejudice to a plaintiff will be presumed if, as the result of an SPD deficiency, he was not aware of the need to take an action within his control . . . which would have avoided the

---

[9]    <u>See</u>, <u>e.g.</u>, <u>Whittaker Corp. v. Calspan Corp.</u>, 810 F. Supp. 457, 462 (W.D.N.Y. 1992) ("to the extent that New Mexico law provides a more lenient standard for determining the validity of liquidated damage clauses, the choice-of-law issue is material and, therefore, New Mexico law should be applied to [plaintiff's] summary judgment motion"); <u>KIC Chems v. ADCO Chem. Co.</u>, No. 95-6321, 1996 U.S. Dist. LEXIS 3244, at *12-13 (S.D.N.Y. Mar. 19, 1996) ("[T]he choice-of-forum clause materially altered the agreement between K I C and ADCO").

restriction on eligibility for benefits").

Because Plaintiff has established that a conflict exists between the Policy and the SPD resulting from the omission of the Florida choice-of-law provision, and that such omission will cause, and has caused, "likely harm" to Plaintiff, Plaintiff has demonstrated that the SPD, and not the Policy, governs the claims asserted herein. See Shore, 2007 U.S. Dist. LEXIS 77039 at *24-25.

C. **Federal Choice Of Law Rules Mandate That New York Law Governs Plaintiff's Claims Because New York has the Most Significant Relationship to the Transaction and the Parties**

Because, as demonstrated above, the SPD controls, and there is no choice-of-law provision in the SPD, the Court must perform a choice-of-law analysis to determine which law to apply to Plaintiff's claims, as governed by the SPD.

Federal common law determines the choice-of-law rule to be applied in this case because the underlying claim (and therefore jurisdiction) is based on ERISA. Croskey v. Ford Motor Company-UAW, No. 01-1094, 2002 U.S. Dist. LEXIS 8824, *15-16 (S.D.N.Y. May 2, 2002); see Wells Fargo Asia Ltd. v. Citibank N.A., 936 F.2d 723, 726 (2d Cir. 1991) ("In federal question cases, we are directed to apply a federal common law choice of law rule to determine which jurisdiction's substantive law should apply").

The Second Circuit has held that, "'[t]he federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation.'" Eli Lilly do Brasil, Ltda v. Fed. Express Corp., 502 F.3d 78, 81 (2d Cir. 2007) (emphasis added) (quoting In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir. 1992)). Further, in the Second Circuit, while courts may seek guidance from the Restatement (Second) of Conflict of Laws, it is not controlling. Eli Lilly, 502 F.3d at 81

("[w]hen conducting a federal common law choice-of-law analysis, absent guidance from Congress, we <u>may</u> consult the Restatement (Second) of Conflict of Laws") (emphasis added).

Moreover, as Aetna concedes, there is no discernable difference between the New York and federal choice-of-law rules.  <u>See</u> Dft's Br., n.6. Thus, in New York, in insurance coverage actions, "New York generally gives controlling effect to the law of the jurisdiction which has the <u>greatest interest in the matter</u>. Important factors in making this determination are, for example, location of the insured risk, residence of the parties, and where the contract was issued and negotiated." <u>Avondale Indus., Inc. v. Travelers Indem. Co.</u>, 774 F. Supp. 1416, 1422 (S.D.N.Y. 1991).

In <u>In re O.P.M. Leasing Services, Inc.</u>, 28 B.R. 740, 749 (Bankr. S.D.N.Y. 1983), the court analyzed New York's rules on conflict of laws:

> In the leading case determining New York's rule on conflict of laws, <u>Auten v. Auten</u>, 308 N.Y. 155, 124 N.E. 2d 99 (1954), New York's highest court adopted the "center of gravity" or the "grouping of contracts" theory with respect to choice of law in contract cases.
>
> * * *
>
>> Under this theory, the courts, instead of regarding as conclusive the parties' intention or the place of making or performance, lay emphasis rather upon the law of the place which has the most significant contacts with the matter in dispute. [citations omitted] Id. at 160, 124 N.E. 2d at 101-102.
>>
>> [T]he merit of its approach is that it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation.

(Citations omitted).  The court in <u>In re O.P.M. Leasing Servs., Inc.</u>, went on to explain

14

the "center of gravity" test:

> (1) The court must isolate the issue on which the laws conflict;

> (2) The court must identify the purposes of the conflicting state laws to determine whether a genuine conflict exists; [and]

> (3) The court must examine the contacts of the interested jurisdictions to ascertain which has the closer connection with the facts of the case and thus has the superior interest in having its law applied. See Krause, supra, at 100; Dym, 16 N.Y. 2d at 124, 209 N.E. 2d at 794, 262 N.Y.S. 2d at 466.

Id. at 749. See, e.g., In re Bidermann Indus. U.S.A., 241 B.R. 76, 83 (Bankr. S.D.N.Y. 1999) (Reaching same conclusion "[u]nder either the federal common law 'substantial relationship' approach or New York's 'center of gravity' test for choice-of-law questions").

The facts of this case dictate that New York has the "greatest interest" in this litigation. Plaintiff Woloshin: (i) is a resident of New York; (ii) was employed in New York; (iii) contracted for this insurance coverage in New York; (iv) paid for his portion of the insurance premiums in New York; (v) suffered a disability in New York; (vi) received his SPD evidencing his coverage and rights under the Plan in New York; and (vii) has his treating physicians in New York. Moreover, the place of performance of the SPD is New York and the subject matter of the SPD, i.e., Plaintiff Woloshin' claim for benefits under the SPD, was incurred New York.

Moreover, New York has a substantial policy interest in having New York Insurance Law cover its residents. NY Ins. Law § 3234 (a)(2), a statutory provision that limits claim denials on the basis of pre-existing conditions, was enacted to insure that New York residents (like Mr. Woloshin) were not permanently denied disability benefits

due to a preexisting condition.[10]  California and Florida, without similar laws, have no

interest in seeing the laws of those states apply to Plaintiff's claims.  Therefore New York

has an overriding interest in seeing its disabled residents receive insurance benefits.  See,

e.g., Metro. Life Ins. Co. v. Manning, 568 F.2d 922, 926 (2d Cir. 1977) (In an ERISA

case dealing with claims life insurance proceeds, the Second Circuit held that the

determination of the lawful widower was to be made in accordance with "the law of her

domicile at death," finding that "the state of the insured's domicile is the state most

interested in questions of the insured's marital status").

The facts here can lead to no conclusion other than that New York has the greatest

interest in this matter.

Analysis under the Restatement (Second) of Conflicts of Law, which is not

controlling, does not lead to a contrary conclusion.  The Court "must balance principles,

policies, factors, weights, and emphases to reach a result, the derivation of which, in all

honesty, does not proceed with mathematical precision."  International Ins. Co. v.

Stonewall Ins. Co., 86 F.3d 601, 606 (6th Cir. 1996).

Restatement (Second) of Conflicts of Law, § 188 states in relevant part:

(1) The rights and duties of the parties with respect to an issue in a
contract are determined by the local law of the state which, with respect to
that issue, has the most significant relationship to the transaction and the
parties . . . .

(2) In the absence of an effective choice of law by the parties . . . the
contacts to be taken into account in applying the principles of § 6 to
determine the applicable law to an issue include:

---

[10]      Permanently denying long-term disability to New York residents can have the
consequence of requiring that New York take on the burden of providing for its disabled citizens,
which is contrary to the intent of NY Ins. Law § 3234 (a)(2).  See NYLS' Governor's Bill
Jacket, 1993 Chapter 650 (Ex. 37 hereto)  ("This legislation is necessary to close a
loophole which could jeopardize" the health and disability coverage of New York
employees).

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and
place of business of the parties.

Applying Section 188 to the SPD and the unique facts concerning Plaintiff's contracting for coverage under the Plan, also requires the conclusion that New York law applies.

The Sixth Circuit's holding in <u>Med. Mutual of Ohio v. Desoto</u>, 245 F.3d 561 (6th Cir. 2001), a case on point, is instructive. In <u>Desoto</u>, plaintiff, an Ohio based insurance company, provided group health insurance coverage to defendant's employer, also based in Ohio. Defendant insured, who worked and lived in California, was injured and sought medical treatment at a California hospital. Defendant later successfully sued the hospital for damages resulting from her treatment at the hospital. Plaintiff insurer then brought an action in Northern District of Ohio seeking recovery of medical expenses from defendant insured. Defendant deSoto, however, asserted that California law controlled and that California insurance law prohibited insurer from recovering medical expenses. The district court disagreed and found that Ohio law controlled and ordered the insured to reimburse the insurer for medical expenses.

Recognizing the case to be an exception to the general rule (as is here), the Sixth Circuit reversed, holding that <u>because the rights of the parties were governed by the insurance certificate</u> and not the group policy, California law applied to plaintiff's claims:

> [W]e conclude that California law applies. If the factors in section 188 militate toward either state, it is toward California law. The record does not reveal the place of contracting. However, the place of performance--where MMO provided benefits to Mrs. deSoto and where Mrs. deSoto took steps to receive those benefits--was California. The subject matter of

17

> the contract--Mrs. deSoto's medical expenses--was incurred in California. And while MMO is an Ohio corporation, Mrs. deSoto is a resident of California.
>
> More important to our decision is the policy interest California has in its law applying. See id. at 608-09 (Ryan, J., concurring); Restatement (Second) Conflicts of Law § 188 cmt. f ("In general, it is fitting that the state whose interests are most deeply affected should have its local law applied."). California enacted the Medical Injury Compensation Reform Act, 1975 Cal. Stat., Second Ex. Sess. 1975-1976, chs. 1, 2, at 3949-4007, codified in part in Civil Code section 3333.1, in an effort to limit the liability of health care providers, thereby alleviating the burden on their insurance companies.

Id. at 571.

The Sixth Circuit's holding is grounded in the distinction made between the policy, which was issued to the employer, and the certificate which described the policy terms and which was issued to the employee insured. The facts here require that the same distinction be made between the Policy and the conflicting SPD provided to Mr. Woloshin.

Defendant's reliance on the Restatement (Second) of Conflict of Laws, §192, comment h, for the proposition that the rights of the parties here should be governed by the law governing the master policy, is misplaced. As an initial matter, "no New York court has wholly adopted [comment H] as law." Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 102 (2d Cir. 1981). In Krauss, the Second Circuit applied Illinois law in an action by an Illinois resident to recover life insurance proceeds under a group life insurance master policy issued by a New York insurer to a New York based trust insuring plaintiff's husband, an Illinois resident, even though the master policy was delivered in New York. The Second Circuit found that Illinois law which, despite the master policy's incontestability clause, would permit the insurer to raise such a defense, was not

18

genuinely in conflict with the law of New York that barred such defense, <u>where New York law did not have purpose of protecting nondomiciliaries</u>. On the other hand, the court found that Illinois law was intended to <u>protect its resident insureds</u>. Moreover, the court found more persuasive the fact that Illinois was the place where insured's certificate was delivered, rather than the fact that New York was place of issuance and delivery of the master policy.   This analysis leads to a similar conclusion here – NY Ins. Law § 3234 (a)(2) was intended to protect New York residents, and California law does not "<u>have purpose of protecting nondomiciliaries.</u>"   <u>Id</u>. at 101. Therefore, New York law must apply.

Finally, even by its own language, Section 192, comment h, applies to cases where the Policy governs (which is not the case here).  Further, by its very language, Section 192, comment h, is not to be applied in all cases, leaving itself open to exceptions, <u>e.g.,</u> where the SPD governs.[11]

Accordingly, where, as here, New York (and not Florida or California) is the only state that has a true interest in this action, New York law should apply. <u>See</u> <u>Norlin Corp. v. Rooney, Pace, Inc.</u>, 744 F.2d 255, 264 (2d. Cir. 1984) ("[W]hen the interests of only one state are truly involved, the purported conflict is purely illusory. Thus, there is no reason why the law of the forum state should not control.").

---

[11]    <u>See</u> §192, cmt. h:

In the case of group life insurance, rights against the insurer are <u>usually</u> governed by the law which governs the master policy. . . . So where an employer arranges for group life insurance . . ., the rights of a particular employee against the insurer will <u>usually</u> be determined, in the absence of an effective choice-of-law clause and at <u>least as to most issues</u>, not by the local law of the state where the employee was domiciled . . . but rather by the law governing the master policy . . . .

III.  **NO FACTUAL OR LEGAL BASIS EXISTS FOR APPLYING THE LAWS OF EITHER FLORIDA OR CALIFORNIA TO PLAINTIFF'S CLAIMS**

    A.  **There is No Basis to Apply Florida Law to the SPD or the Policy**

As discussed above, New York law governs Plaintiff's claim. Defendant's argument that Florida law should govern Plaintiff's claims – besides ignoring the conflict between the SPD and the Policy – is premised on the baseless contention that "Aetna and Memec expressly agreed that Florida law would govern the Policy." Dft's Br., p. 9 (emphasis added). In support of this central contention, Aetna has offered no evidence that any such agreement, express or otherwise, ever existed. The support for this proposition is found in Aetna's LR 56.1(a) Statement, ¶ 12, which cites two pieces of "evidence," the first being an affidavit which states that Aetna advised Memec's broker that Aetna could "include the conversion benefit for the long-term disability policy by writing the policy in Florida." Any reasonable reading of this statement cannot be construed to support the contention that Aetna and Memec had an "express" agreement that Florida law would govern.

The final piece of "evidence' that Aetna points to in its LR 56.1(a) Statement, ¶12, is the cover page of the Policy, which contains the choice-of-law provision. The Policy alone, without any facts supporting the contention that the Policy was actually provided to Memec (or Plaintiff), raises a material fact as to whether any agreement, express or otherwise, ever existed. Indeed, this "evidence" does not address the questions as to whether Memec: (a) received the Policy; (b) knew of the choice of law provision in the Policy; (c) agreed or even knew that the Policy was to be "delivered" in Florida; or (d) agreed that Florida law would govern the terms of the Policy.

The facts do, however, establish that Aetna was not licensed to write the Policy in California (or Florida) with the conversion provision requested by Memec. In order to write the Policy as requested and not lose favor with Marsh, Aetna violated its own internal policies and wrote the Policy in Florida. The evidence also makes clear that even though Aetna was not approved to offer the conversion privilege in Florida, it did so anyway. See Ex. 1 (Febles Tr., pp, 93-95).

Indeed, during the November 25, 2008 Pre-Motion Conference held before this Court, counsel for Defendant admitted that there is no evidence that the Policy was ever delivered to Memec (in Florida, or anywhere else for that matter).

Thus, Defendant has not met its burden of "pointing to an absence of evidence" that the choice of law provision was not communicated or the Policy not delivered (Dft's Br., p. 7), and has improperly relied on the unsupported fact that "Aetna and Memec expressly agreed that Florida law would govern the Policy." Dft's Br., p. 9. See, e.g., Varda, Inc. v. Ins. Co. of North America, No. 85-8533, 1992 U.S. Dist. LEXIS 7714, *8 (S.D.N.Y. May 26, 1992)(Judge McKenna recognized "the difficulty of proving a negative, i.e., the non-receipt of the [insurance] booklet" and found that a "genuine issue of material fact remains as to whether plaintiff received the booklet along with the policy") (emphasis added).

Thus, all of the foregoing, at a minimum, raises a question of fact as to whether Memec ever "expressly agreed that Florida law would govern the Policy." Dft's Br., p. 9.

Defendant's citation to a sole case in the District of Vermont for the illogical proposition that the choice of law provision in the policy is valid and enforceable irrespective of delivery (Dft's Br., n.7) is unpersuasive, not the law in this Circuit and is

in conflict with the testimony of its own employees.[12]  In <u>Varda</u>, 1992 U.S. Dist. LEXIS 7714, defendant moved for summary judgment on the basis of plaintiff insured's failure to file a proof of loss.  Judge McKenna, finding that a question of fact existed as to whether the defendant failed to deliver the policy booklet which contained the requirement of filing a proof of loss, further found that by non-delivery of the booklet defendant may have <u>waived the booklets requirements or could be estopped from asserting them.</u>  <u>Id.</u> at *8.

Moreover, the Second Circuit has held that New York courts can disregard the choice-of-law provision found in contracts "where the most significant contacts with the matter in dispute are in another state." <u>See</u> <u>Walter E. Heller & Co. v. Video Innovations, Inc.</u>, 730 F.2d 50, 52 (2d Cir. 1984).

Furthermore, Defendant's argument that the Restatement (Second) of Conflicts of Laws §187, requires that this Court apply Florida law to Plaintiff's claims because Aetna and Memec purportedly "chose" Florida law to apply is unavailing.  Dft's Br., pp. 9-10. The obvious flaw in this argument is that there is <u>no</u> evidence that Memec and Aetna "chose" Florida law to govern, and therefore § 187 is not applicable.  Indeed, Defendant's entire argument is premised on the unsupported self-serving statement that "Aetna and Memec . . . clearly intended for Florida law to govern their agreement." Dft's Br., p. 12. <u>See</u> <u>DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden</u>, 448 F.3d 918, 924 (6th Cir. 2006) ("The first step of analysis under section 187 is to determine whether the contractual parties <u>could have</u> resolved the particular issue being litigated <u>by an</u>

---

[12]  According to an Aetna witness, a policy should be delivered "So that there was a mutual    understanding of the coverages and benefits included in their business relationship." <u>See</u> Ex. 5 (Bjarno Tr., p. 65-66).

explicit provision in the contract.") (emphasis added). Here, because there is a question of fact as to whether Memec agreed to the choice of law provision in the Policy, Section 187 is not applicable.

      **B.**    **California Law Does Not Govern the SPD**

As set forth above, it would be inappropriate to apply any law other than New York law to Plaintiff's claims. Indeed, because it was Defendant's choice to deliver to Plaintiff a "conflicting" SPD, Defendant has created the situation whereby New York, and not California, has the greatest interest in Plaintiff's claims.

Moreover, as discussed above, applying the federal choice-of-law rules to the SPD, New York, and not California, has the "greatest interest in the litigation." Eli Lilly, 502 F.3d 78, 81. For example, the location of the insured risk (Mr. Woloshin) is New York, the residence of the parties (Aetna and Woloshin) is New York and Connecticut (not California), and the SPD was issued to Woloshin is New York (and not California). See Avondale, 774 F. Supp. at 1422. Finally, it is New York, and not California, that acted to protect its resident insureds by enacting NY Ins. Law § 3234 (a)(2). See, e.g., Krauss, 643 F.2d at 102.

Accordingly, California law does not govern Plaintiff's claim.

**IV.**    **APPLYING NEW YORK LAW IN THIS ACTION WOULD FURTHER THE PURPOSE OF ERISA**

The application of New York law to Plaintiff's claim would make him eligible for long-term disability benefits under the Plan, a result that would further the express purpose of ERISA -- to "provide more coverage and protection to beneficiaries." Tyler v. AIG Life Ins. Co., 273 Fed. Appx. 778, 784 (11th Cir 2008).

Defendant's self-serving attempt to invoke ERISA's "objective of providing uniformity in the disbursement of plan benefits" (Dft's Br., p. 22), and therefore the application of California law to all Plan participants, should not be condoned. Indeed, if Aetna was interested in promoting "uniformity" it should have supplied an SPD to Memec's employees which did not conflict with the Policy. What is the fundamental fairness in keeping the Florida choice-of-law provision from Memec's employees, when, according to Defendant, 98% of Memec's employees were located <u>outside</u> of Florida (Dft's Br., p. 2). Thus, it is patently  inequitable and disingenuous for Defendant to invoke <u>Wang Labs, Inc. v. Kagan,</u> 990 F.2d 1126, 1128-29 (9th Cir. 1993)  for the proposition that "[w]here a choice of law is made by an ERISA contract, it should be followed, <u>if not unreasonable or fundamentally unfair,</u>" when the only unfairness flows from Defendant's conduct.

**V.    NEW YORK INSURANCE LAW §§ 3234(A)(2) AND 3201 ARE APPLICABLE TO PLAINTIFF'S RIGHTS UNDER THE SPD**

Defendant, again, resorts to the same argument, that the Policy expressly provides for delivery in Florida, and therefore, NY Ins. Law 3234 does not apply since it only applies to policies "issued or issued for delivery" in New York.  This analysis is incorrect, because it has been demonstrated that the SPD (which is part of the Policy and created it owns rights and liabilities) controls the relationship of the parties, and the SPD* was delivered to Plaintiff in New York. <u>See</u>, <u>e.g.</u>, <u>Krauss</u>, 643 F.2d at 102 (court found more persuasive place where insured's certificate was delivered, rather than place of issuance and delivery of the master policy).

While the line of cases cited by Defendant may stand for the general proposition that "[g]roup insurance policies . . . are issued and delivered to the group policyholder"

(Dft's Br., pp. 17-18), they do not address the exception demanded by the facts here, i.e., where (i) as a result of a conflict between the SPD and the Policy, the SPD (which was delivered in New York) governs, and (ii) there is a question of fact as whether the Policy itself was ever delivered, and therefore cannot govern.

Therefore, Plaintiff is entitled to the protections and application of the NY Ins. Law, including NY Ins. Law § 3234.

**CONCLUSION**

Accordingly, this Court must deny Defendant's Motion because Plaintiff has established that New York law governs Plaintiff's claims.

Dated: New York, New York
      January 16, 2009

                           **Horwitz, Horwitz &
                           Paradis, Attorneys at Law**

                           By:  /s/ Michael A. Schwartz
                               Michael A. Schwartz (MS2352)
                               Gina M. Tufaro (GT5419)
                               28 West 44th St., 16 Floor
                               New York, NY 10036
                               Tel: (212) 404-2200
                               Fax: (212) 404-2226

                               Richard J. Quadrino
                               Michail Z. Hack
                               **Quadrino & Schwartz, P.C.**
                               666 Old Country Road –
                               Ninth Floor
                               Garden City, NY 11530
                               Tel: (516) 745-1122

                               Attorneys for Plaintiff

## CERTIFICATION

I hereby certify that on January 16, 2009, true and accurate copies of (1) Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, (2) Plaintiff's Local Rule 56.1(b) Statement; and (3) Appendix of Plaintiff's Exhibits in Support of Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, were served by e-mail and overnight mail on Defendant's counsel of record. I further certify that upon notice of electronic filing of Defendant's reply papers, the foregoing will be filed electronically via the Court's electronic filing system in accordance with Judge Kara's Individual Rules.

Michael A. Schwartz (MS2352)